James E. Cecchi
Lindsey H. Taylor
**CARELLA, BYRNE, CECCHI,**
**OLSTEIN, BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, New Jersey 07068
Telephone: (973) 994-1700

Joseph H. Meltzer
Melissa L. Troutner
**KESSLER TOPAZ**
**MELTZER & CHECK LLP**
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706

*Attorneys for Plaintiffs and the proposed Classes*

[Additional counsel appear on signature page.]

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| GILBERT FERGUSON, KAPIL GREWAL, JENNIFER BRITT, JOSH HALEM, and GRANT TAYLOR, on behalf of themselves and all others similarly situated, | Civil Action No. |
| Plaintiffs, | **CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL** |
| v . | |
| BAYERISCHE MOTOREN WERKE AKTIENGESELLSCHAFT, and BMW of NORTH AMERICA, LLC, | |
| Defendants | |

**TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................ 1

II.     JURISDICTION AND VENUE ......................................................................... 7

III.    PARTIES ............................................................................................................ 8

IV.     FACTUAL ALLEGATIONS ........................................................................... 15

        A.      The Defective Sunroofs ...................................................................... 15

        B.      Defendants' Knowledge of the Defect in the Defective Sunroofs and Associated Safety Risk .................................................................................................. 21

V.      FURTHER ALLEGATIONS............................................................................ 28

VI.     TOLLING OF THE STATUTE OF LIMITATIONS....................................... 31

VII.    CLASS ACTION ALLEGATIONS ................................................................. 32

VIII.   CLAIMS FOR RELIEF ................................................................................... 37

IX.     PRAYER FOR RELIEF ................................................................................. 121

X.      DEMAND FOR JURY TRIAL ...................................................................... 122

The allegations herein are based on personal knowledge as to Plaintiffs' own conduct and are made on information and belief as to all other matters based on an investigation by counsel:[1]

## I.    INTRODUCTION

1.    Plaintiffs Gilbert Ferguson, Kapil Grewal, Jennifer Britt, Josh Halem, and Grant Taylor ("Plaintiffs") bring this class action against Bayerische Motoren Werke Aktiengesellschaft ("BMW AG") and BMW of North America, LLC ("BMW NA"), (collectively, "BMW" or "Defendants"), individually and on behalf of all persons in the United States who purchased, own, owned, lease, or leased a Class Vehicle (defined below) for Defendants' violations of common and statutory law and concealment of a known defect in the Class Vehicles.

2.    Defendants wrongfully and intentionally concealed a defect in the sunroofs and/or moonroofs (the "Defective Sunroofs") of the Class Vehicles, which can explode or shatter unexpectedly, exposing Plaintiffs and members of the Classes (defined below) to a shower of glass from the exploding Defective Sunroofs and forcing them to incur out of pocket costs to repair or replace the Defective Sunroofs and/or repair or replace other vehicle parts damaged by the explosion.

3.    The Defective Sunroofs present a significant safety risk for Plaintiffs and members of the Classes because when the Defective Sunroofs suddenly and unexpectedly explode, shattered glass can be showered over the driver and passengers of the Class Vehicles. In addition, drivers and occupants of the Class Vehicles are at risk for collisions as a result of driver distraction caused by the exploding Defective Sunroofs.  Drivers have compared the

---

[1]    Counsel's investigation includes an analysis of publicly available information, including investigative reports, consumer complaints to the National Highway Traffic Safety Administration ("NHTSA") and other sites, and additional analysis. Plaintiffs believe that a reasonable opportunity for discovery will provide further support for the claims alleged herein.

explosion of the Defective Sunroofs to the sound of a gunshot and have expressed shock and confusion upon hearing the sound when driving.

4.    In October 2017, *Consumer Reports* published an investigation detailing hundreds of complaints of exploding sunroofs across numerous brands, including BMW.[2]  According to the Report, exploding sunroofs are an underreported problem and the consumer complaints in the NHTSA database "are only a fraction of the actual sunroof explosions occurring in the U.S."[3] *Consumer Reports* determined that exploding sunroofs "have happened in every month of the year in every part of the country, in vehicles from all over the world; they have occurred on interstates, on country roads, and even while parked in driveways."[4]

5.    Many of the complaints relate to panoramic sunroofs/moonroofs which have risen in popularity over at least the past decade.  Vehicle manufacturers have added panoramic sunroofs/moonroofs—large or multi-panel sunroofs that provide light to the front and rear passengers of a vehicle—as a design feature for which they often charge premium prices.

6.    BMW began installing panoramic sunroofs/moonroofs in certain of the Class Vehicles in or around 2004, generally marketing the panoramic sunroofs/moonroofs as a luxury upgrade.  For example, the BMW X5 xDrive 35i advertises the "[p]anoramic moonroof with fully automatic, 2-piece glass panel, power slide and lift control, wind deflector and power interior sunshade" as a feature adding to the vehicle's "Comfort and convenience[.]"[5]  Similarly, the Mini Clubman touts its dual-pane panoramic sunroof with "[a]lmost 11 square feet of glass

---

[2]    *See* Jeff Plungis and Thomas Germain, *Exploding Sunroofs: Danger Overhead*, CONSUMER REPORTS (Oct. 12, 2017) https://www.consumerreports.org/car-safety/exploding-sunroofs-danger-overhead/ (the "Report").

[3]    *Id.*

[4]    *See id.*

[5]    *See The X5 xDrive35i, Features & Specs*, https://www.bmwusa.com/vehicles/x-models/x5/x5-xdrive35i.html (last visited Dec. 4, 2019).

[that] enhance[s] the view for both front and rear passengers."[6]  According to the Report, experts agree that "[t]he bigger the expanse of glass, the harder to ensure it won't shatter."[7]

7.    In November 2017, United States Senators Richard Blumenthal and Edward Markey sent letters to numerous car manufacturers, including BMW, asking the manufacturers to answer detailed questions regarding sunroof materials, design and defects.  The senators demanded information concerning manufacturers' glass suppliers and whether BMW, among others, is tracking incidents of exploding sunroofs, by December 4, 2017.  The senators stated: "It is vital that [BMW and others] take steps to assure consumers of the structural integrity of their sunroofs."[8]

8.    Industry experts have also expressed concerns over the safety of panoramic sunroofs.  According to Jason Levine, executive director at the Center for Auto Safety: "The fact that the roof is half glass instead of a quarter glass or no glass doesn't change the responsibility of the industry and the individual automaker to make sure the compartment is as safe as possible. . . . The concern has to be for safety first, and then the aesthetics."[9]

9.    In addition to complaints regarding panoramic sunroofs/moonroofs in the Class Vehicles, numerous complaints have been made to NHTSA and other online forums relating to non-panoramic sunroofs/moonroofs in the Class Vehicles.[10]

---

[6]    *See The Mini Clubman, Motoring Features*, http://www.miniusa.com/content/miniusa/en/why-mini/programs-and-events/clubman-retail.html (last visited Dec. 4, 2019).

[7]    Report at 2.

[8]    *See* Jeff Plungis, *Senators Press Auto Industry on Exploding Sunroofs*, CONSUMER REPORTS, (Nov. 15, 2017) https://www.consumerreports.org/car-safety/senators-press-auto-industry-on-exploding-sunroofs/.

[9]    Report at 7.

[10]    *See, e.g.*, ¶¶ 54-55; *see also* www.safercar.gov.

10.     The affected vehicles include the following vehicles containing a sunroof or moonroof: MY 2005-2019 BMW 2 series; MY 2005-2018 BMW 3 series; MY 2005-2018 BMW 5 series; MY 2004-2018 BMW X5s; MY 2004-2018 X3s; MY 2009-2018 BMW X1s; MY 2008-2018 MINI Clubmans, MY 2006-2018 MINI Coopers, MY 2011-2018 MINI Countrymans, MY 2009-2018 MINI Hardtops and MY 2013-2018 MINI Pacemans (the "Class Vehicles").

11.     The Defective Sunroofs are defective in design, manufacturing, materials and/or workmanship.  Despite Defendants' knowledge of the defect in the Defective Sunroofs, Defendants never disclosed to Plaintiffs and members of the Classes that the defect exists or that drivers and occupants of the Class Vehicles are at risk.

12.     Replacement of the Defective Sunroofs typically costs thousands of dollars.  On information and belief, Defendants have wrongfully refused to cover replacement of the Defective Sunroofs under the Class Vehicles' applicable warranties.  Thus, Defendants have wrongfully and intentionally transferred the cost of repair or replacement of the Defective Sunroofs to Plaintiffs and members of the Classes by fraudulently concealing the existence of the defect.

13.     In connection with the purchase or lease of each of the Class Vehicles, Defendants provide warranty coverage for the Class Vehicles under one or more manufacturer's warranties.  For illustrative purposes, Defendants currently provide a New Vehicle Limited Warranty which includes coverage for defects in materials or workmanship to the first retail purchaser and each subsequent purchaser for 4 years or 50,000 miles, whichever occurs first.[11] Under warranties provided to members of the Classes, Defendants promised to repair or replace

---

[11]     *See BMW Service and Warranty Books*, https://www.bmwusa.com/explore/bmw-value/bmw-ultimate-service/service-and-warranty-books.html (last visited Dec. 4, 2019); *MINI, 4-Year/50,000-Mile Limited Warranty* ("MINI Warranty"), http://www.miniusa.com /content/miniusa/en/why-mini/why-mini/covered-maintenance.html (last visited Dec. 4, 2019).

covered defective parts arising out of defects in materials and/or workmanship, including the Defective Sunroofs, at no cost to owners and lessees of the Class Vehicles. However, on information and belief, Defendants have concealed the defect in the Defective Sunroofs by, *inter alia*, blaming the damage on rocks or other foreign matter, and have refused to provide warranty coverage.

14. These warranties were provided in Class Vehicle window labels, owner's manuals and brochures, and advertised on Defendants' websites. As described on MINI's website: "At MINI, our commitment to quality, durability and customer satisfaction is clearly demonstrated by the 4-year/50,000-mile MINI New Passenger Car Limited Warranty and a 12-year/unlimited mileage warranty against rust perforation. And we're not just talking about a couple key parts of your MINI. Our warranty covers everything, bumper to bumper and everything in between, except the tires."[12] As described by BMW on its website, "When you own The Ultimate Driving Machine, you should get the service to match," touting that the New Vehicle Warranty provides "[p]rotection for the first four years or 50,000 miles. Clearly, we stand behind our engineering."[13]

15. Defendants breached their express and implied warranties through which they promised to, *inter alia*, (1) provide Class Vehicles fit for the ordinary purpose for which they were sold; and (2) repair and correct manufacturing defects or defects in materials or workmanship of any parts they supplied, including the Defective Sunroofs. Because the defect in the Defective Sunroofs was present at the time of sale or lease of the Class Vehicles, Defendants are required to repair or replace the Defective Sunroofs under the terms of the

---

[12]    *See* MINI Warranty.

[13]    *See BMW Maintenance Program 4 Yrs or 50K Miles*, http://www.miniusa.com/content/miniusa/en/why-mini/why-mini/covered-maintenance.html (last visited Dec. 4, 2019).

warranties. Further, Defendants have wrongfully transferred the costs of repair or replacement of the Defective Sunroofs to Plaintiffs and members of the Classes through fraudulent concealment of the defect and by blaming rocks or other foreign matter for the explosions of the Defective Sunroofs. These costs are significant and range in the hundreds or thousands of dollars, and no reasonable consumer expects to incur such costs when purchasing or leasing the Class Vehicles.

16.    Defendants benefited from increased profit margins by upselling Class Vehicles with the Defective Sunroofs to Plaintiffs and members of the Classes, as the panoramic sunroofs or moonroofs are often not a standard feature in the base models, but rather require an upgrade by consumers, oftentimes costing consumers thousands of dollars more than the purchase price of the vehicles to contain such a feature.[14] Defendants continue to profit from the lease and sale of Class Vehicles to unsuspecting consumers.

17.    Knowledge and information regarding the defect in the Defective Sunroofs was in the exclusive and superior possession of Defendants and their dealers, and was not provided to Plaintiffs and members of the Classes, who could not reasonably discover the defect through due diligence. Based on pre-production testing, design failure mode analysis, and consumer complaints to dealers and NHTSA, *inter alia*, Defendants were aware of the exploding or shattering of the Defective Sunroofs in the Class Vehicles and fraudulently concealed the defect from Plaintiffs and members of the Classes.

18.    Defendants misrepresented the standard, quality or grade of the Class Vehicles and knowingly, actively, and affirmatively concealed the existence of the defect in the Defective Sunroofs to increase profits and decrease costs by selling additional Class Vehicles and

---

[14]    *See* Report at 9.

transferring the costs of repair or replacement of the Defective Sunroofs to owners and lessees of the Class Vehicles, including Plaintiffs and members of the Classes.

19.    Plaintiffs and members of the Classes assert claims against Defendants for fraud, negligent misrepresentation, breach of express and implied warranties, violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*, violation of the Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1791 *et seq.*, and violations of consumer fraud and unfair and deceptive trade practices statutes under the laws of Alabama, Arizona, California, and Georgia.

20.    Defendants knowingly omitted, concealed, and suppressed material facts regarding the defect in the Defective Sunroofs and its corresponding safety risk, and misrepresented the standard, quality or grade of the Class Vehicles, which directly caused harm to Plaintiffs and members of the Classes.  As alleged herein, Defendants' wrongful conduct has harmed owners and lessees of the Class Vehicles, and Plaintiffs and members of the Classes are entitled to damages and injunctive and declaratory relief.

21.    As a direct result of Defendants' wrongful conduct, Plaintiffs and members of the Classes have suffered damages, including, *inter alia*: (1) out-of-pocket expenses for repair or replacement of the Defective Sunroofs and/or other vehicle parts damaged by the exploding sunroofs; (2) costs for future repair or replacement of the Defective Sunroofs; (3) time lost associated with the repair or replacement of the Defective Sunroofs and/or expenses related to obtaining alternative transportation during the repair or replacement of the Defective Sunroofs; (4) sale of their vehicles at a loss; and/or (5) diminished value of their vehicles.

## II.    JURISDICTION AND VENUE

22.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), as the matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000

and is a class action in which there are more than 100 members of the Classes, members of the Classes (as defined below) are citizens of states different from Defendants, and greater than two-thirds of the members of the Classes reside in states other than the states in which Defendants are citizens. This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331, based upon the Magnuson-Moss Warranty Act claims asserted under 15 U.S.C. § 2301, *et seq.*, and supplemental jurisdiction over the state-law claims pursuant to 28 U.S.C. § 1367.

23.    Venue properly lies in this District pursuant to 28 U.S.C. § 1391(a), (b) and (c) because BMW NA maintains its principal place of business in New Jersey, a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District, and Defendants conduct a substantial amount of business in this District.  Defendants have marketed, advertised, sold, and/or leased the Class Vehicles within this District through numerous dealers doing business in the District, and made decisions related to advertisement, marketing, sales, warranties, and recalls of vehicles under the BMW and MINI brand names from their Woodcliff Lake, New Jersey headquarters, which is located within this District.  BMW NA and MINI maintain at least the following offices and/or facilities in New Jersey: (1) BMW NA headquarters in Woodcliff Lake, New Jersey; (2) MINI headquarters in Woodcliff Lake, New Jersey; (3) BMW NA's Eastern Regional Headquarters and Technical Training Center in Woodcliff Lake, New Jersey; and (4) BMW NA's Vehicle Preparation Center in Port Jersey, New Jersey.  Accordingly, Defendants have sufficient contacts with this District to subject Defendants to personal jurisdiction in the District and venue is proper.

## III.    PARTIES

### Plaintiffs

24.    Plaintiff Gilbert Ferguson is a citizen of the State of Alabama and resides in Harvest, Alabama.  On or around July 28, 2012, Plaintiff Ferguson purchased a new 2013 BMW

X3 with a panoramic sunroof in Huntsville, Alabama from Century BMW for personal or household use. Plaintiff Ferguson still possesses the 2013 BMW X3.

25.     On information and belief, the price Plaintiff Ferguson paid for his Class Vehicle was higher than it would have been had his vehicle not contained a panoramic sunroof. Unbeknownst to Plaintiff Ferguson at the time of his purchase of his Class Vehicle in July 2012, Plaintiff Ferguson's vehicle contained the Defective Sunroof, which exposed Plaintiff Ferguson and his passengers to the risk of a sudden explosion or shattering of the sunroof. Defendants never warned Plaintiff Ferguson of the Defective Sunroof and corresponding safety risk associated with his Class Vehicle.

26.     On or around May 5, 2019, Plaintiff Ferguson was driving his vehicle when he heard his sunroof explode, though he did not understand what the noise was at the time. Upon arriving home, he saw the edges of the sunroof glass facing outward. He contacted Century BMW in Huntsville, Alabama about repairing the sunroof but after taking his information, they did not contact him. When he did not hear back from the dealership, he contact his insurance provider. As a result, Plaintiff Ferguson paid $250 in repairing/replacing his vehicle's Defective Sunroof and associated damaged vehicle parts. Plaintiff Ferguson also incurred damages related to time lost associated with the repair of his vehicle and the lost use of his Class Vehicle during the repair. On information and belief, Plaintiff Ferguson's Defective Sunroof was replaced with another Defective Sunroof.

27.     Plaintiff Kapil Grewal is a citizen of the State of New Mexico and resides in Albuquerque, New Mexico. On or around May 20, 2016, Plaintiff Grewal leased a 2016 BMW X5 with a panoramic sunroof in Phoenix, Arizona from Chapman Auto Group for personal or household use. Plaintiff Grewal no longer possesses the 2016 BMW X5.

28.    On information and belief, the price Plaintiff Grewal paid for his Class Vehicle was higher than it would have been had his vehicle not contained a panoramic sunroof. Unbeknownst to Plaintiff Grewal at the time of lease of his Class Vehicle in 2016, Plaintiff Grewal's vehicle contained the Defective Sunroof, which exposed Plaintiff Grewal and his passengers to the risk of sudden explosion or shattering of the sunroof. Defendants never warned Plaintiff Grewal of the Defective Sunroof and corresponding safety risk associated with his Class Vehicle.

29.    On or around October 14, 2018, Plaintiff Grewal was driving his vehicle, when he heard a large bang and his sunroof shattered. At the time, the shade was open and shattered glass fell into the cabin of the car. He transported his Class Vehicle to Sandia BMW in Albuquerque, New Mexico. The dealership refused to repair the sunroof under BMW's warranty, despite the fact that the vehicle had only 36,947 miles and was within the 4 year limit. As a result, Plaintiff Grewal paid $2,669.46 in repairing/replacing his vehicle's Defective Sunroof and associated damaged vehicle parts. Plaintiff Grewal also incurred damages related to time lost associated with the repair of his vehicle and the lost use of his Class Vehicle during the repair. On information and belief, Plaintiff Grewal's Defective Sunroof was replaced with another Defective Sunroof.

30.    Plaintiff Britt is a citizen of the state of California and resides in Mountain Center, California. On or about December 8, 2017, Plaintiff Britt purchased a certified pre-owned 2014 BMW 320i with a sunroof for personal or household use at Crevier BMW in Santa Ana, California. Plaintiff Britt still owns the 2014 BMW 320i.

31.    On information and belief, the price Plaintiff Britt paid for her Class Vehicle was higher than it would have been had her vehicle not contained a sunroof. Unbeknownst to

Plaintiff Britt at the time of purchase of her BMW 320i in December 2017, Plaintiff Britt's Class Vehicle contained a Defective Sunroof, which exposes Plaintiff Britt and her passengers to the risk of sudden explosion or shattering of the sunroof. Defendants never warned Plaintiff Britt of the Defective Sunroof and corresponding safety risk associated with her Class Vehicle.

32.    On or about June 14, 2018, while Plaintiff Britt was driving the Class Vehicle, the Defective Sunroof in the Class Vehicle exploded with a loud, sudden boom. She took her vehicle to Creiver BMW for repairs. Creiver BMW refused to repair her car under warranty despite the fact that her vehicle was still under warranty and quoted her a price of $4,887 for repair and replacement of the Defective Sunroof. As a result, Plaintiff Britt took her Class Vehicle to another BMW-certified repair shop and paid her $1,000 deductible for repairing/replacing her vehicle's Defective Sunroof and associated damaged vehicle parts under her car insurance policy. Plaintiff Britt also incurred damages related to time lost associated with the repair of her vehicle, the expense of obtaining alternative transportation, and the lost use of her Class Vehicle during the repair. On information and belief, Plaintiff Britt's Defective Sunroof was replaced with another Defective Sunroof.

33.    Plaintiff Josh Halem is a citizen of the state of California and resides in Newbury Park, California. On or about June 28, 2019, Plaintiff Halem purchased a used 2013 BMW X5 with a panoramic sunroof for personal or household use at Ladin Hyundai Subaru in Westlake Village, California. Plaintiff Halem still owns the 2015 BMW X5.

34.    On information and belief, the price Plaintiff Halem paid for his Class Vehicle was higher than it would have been had his vehicle not contained a panoramic sunroof. Unbeknownst to Plaintiff Halem at the time of purchase of his BMW X5 in June 2019, Plaintiff Halem's Class Vehicle contained a Defective Sunroof, which exposes Plaintiff Halem and his

passengers to the risk of sudden explosion or shattering of the sunroof. Defendants never warned Plaintiff Halem of the Defective Sunroof and corresponding safety risk associated with his Class Vehicle.

35. On or about September 19, 2019, while Plaintiff Halem was driving his Class Vehicle, the Defective Sunroof in his Class Vehicle exploded. At the time of the explosion, the vehicle had approximately 43,000 miles on it. On September 26, 2019, Plaintiff Halem contacted Bob Smith BMW in Calabasas, California to inquire as to a warranty repair and was told that the dealer would not cover this as a warranty repair due to a lack of a recall. As a result, Plaintiff Halem took his Class Vehicle to another repair shop and paid his $500 deductible for repairing/replacing his vehicle's Defective Sunroof and associated damaged vehicle parts under his car insurance policy. Plaintiff Halem also incurred damages related to time lost associated with the repair of his vehicle and the lost use of his Class Vehicle during the repair. On information and belief, Plaintiff Halem's Defective Sunroof was replaced with another Defective Sunroof.

36. Plaintiff Grant Taylor is a citizen of the state of Georgia and resides in Alpharetta, Georgia. On or about June 4, 2019, Plaintiff Taylor purchased a used 2016 BMW 228i with a sunroof for personal or household use at Gravity Autos Roswell in Roswell, Georgia. Plaintiff Taylor still owns the 2016 BMW 228i.

37. On information and belief, the price Plaintiff Taylor paid for his Class Vehicle was higher than it would have been had the vehicle not contained a sunroof. Unbeknownst to Plaintiff Taylor at the time of purchase of his BMW 228i in 2019, Plaintiff Taylor's Class Vehicle contained a Defective Sunroof, which exposes Plaintiff Taylor and his passengers to the

risk of sudden explosion or shattering of the sunroof.  Defendants never warned Plaintiff Taylor of the Defective Sunroof and corresponding safety risk associated with his Class Vehicle.

38.    On or about August 24, 2019, while Plaintiff Taylor was driving his Class Vehicle, the Defective Sunroof in his Class Vehicle exploded. At the time of the explosion, his car had approximately 30,000 miles on it.  He took his vehicle to Athens BMW for repairs. Athens BMW refused to repair his car under warranty and quoted him a price of $1,300 for repair and replacement of the Defective Sunroof.  As a result, Plaintiff Taylor took his Class Vehicle to another repair shop and paid his $500 deductible for repairing/replacing his vehicle's Defective Sunroof and associated damaged vehicle parts under his car insurance policy.  Plaintiff Taylor also incurred damages related to time lost associated with the repair of his vehicle, the expense of obtaining alternative transportation, and the lost use of his Class Vehicle during the repair.  On information and belief, Plaintiff Taylor's Defective Sunroof was replaced with another Defective Sunroof.

39.    None of the advertisements reviewed or representations received by Plaintiffs and members of the Classes contained any disclosure relating to the Defective Sunroofs and associated safety risk.  Had Defendants disclosed that the Class Vehicles contained a Defective Sunroof and corresponding safety risk, Plaintiffs and members of the Classes would not have purchased or leased their vehicles, would have paid less for their vehicles, or would not have purchased the upgrades that include the Defective Sunroof as an added feature.

40.    When Plaintiffs and members of the Classes purchased or leased their Class Vehicles, they reasonably relied on the reasonable expectation that the Class Vehicles would be equipped with a sunroof/moonroof that was free from defects and safe to operate.  In fact, Defendants have always emphasized the quality and reliability of the Class Vehicles and know

13

that consumers, including Plaintiffs and the members of the Classes, rely upon such factors when purchasing or leasing Class Vehicles. Had Defendants disclosed that the Defective Sunroofs in the Class Vehicles could suddenly explode or shatter, Plaintiffs and members of the Classes would not have purchased or leased their vehicles, or would have paid less for their vehicles.

41. The Class Vehicles were operated in a reasonably foreseeable manner and as the vehicles were intended to be used. Plaintiffs and members of the Classes have suffered an ascertainable loss as a result of Defendants' unfair and deceptive conduct, breach of common law and statutory duties, and omissions and/or misrepresentations associated with the Defective Sunroofs and associated safety risk, including but not limited to, out-of-pocket losses and diminished value of their respective vehicles.

42. Neither Defendants nor any of their agents, dealers or other representatives informed Plaintiffs and members of the Classes of the Defective Sunroofs and associated safety risk prior to the purchase or lease of the Class Vehicles or during their ownership of the Class Vehicles.

**Defendants**

43. Defendant BMW AG is a German business entity with its principal place of business in Munich, Germany. BMW AG designs, develops, manufactures, and/or sells luxury automobiles under the BMW and MINI brand names. BMW AG is the parent corporation of BMW NA.

44. Defendant BMW NA is a Delaware limited liablity company with its headquarters located in Woodcliff Lake, New Jersey. BMW NA's Eastern Regional Headquarters and Technical Training Center are also located in Woodcliff Lake, New Jersey and its Vehicle Preparation Center is located in Port Jersey, New Jersey. BMW NA advertises, markets and sells luxury automobiles under the BMW brand name throughout the United States. According to

BMW NA,[15] MINI USA is an unincorporated division of BMW NA, and it advertises, markets and sells luxury automobiles under the MINI brand name throughout the United States.

45.     At all relevant times, BMW NA and MINI acted as authorized agents, representatives, servants, employees and/or alter egos of BMW AG while performing activities including but not limited to advertising, warranties, warranty repairs, dissemination of technical information and monitoring the performance of BMW and MINI vehicles in the United States, including substantial activities that occurred within this jurisdiction.

46.     At all times relevant to this action, Defendants manufactured, distributed, sold, leased, and warranted the Class Vehicles under the BMW and MINI brand names throughout the United States.  Defendants and/or their agents designed, manufactured, and/or installed the Defective Sunroofs in the Class Vehicles.  Defendants and/or their agents also developed and disseminated the owner's manuals, warranty booklets, maintenance schedules, advertisements, and other promotional materials relating to the Class Vehicles.

47.     On information and belief, at all times relevant to this action, BMW NA and MINI made decisions related to advertisement, marketing, sales, warranties, and recalls of vehicles under the BMW and MINI brand names from their Woodcliff Lake, New Jersey headquarters, which is located within this District.

## IV.    FACTUAL ALLEGATIONS

### A.    The Defective Sunroofs

48.     The Class Vehicles are equipped with the Defective Sunroofs, which expose Class members and their passengers to the risk of sudden explosion or shattering of the Defective Sunroofs.

---

[15]    *See* Defendant BMW of North America, LLCs Rule 7.1 Disclosure Statement, *Oscar v. MINI USA*, No. 09-00011 (S.D.N.Y. Apr. 7, 2010), ECF No. 43.

49.     According to *Consumer Reports*, the occurrence of an exploding sunroof has recently become all too common. Incidents involving exploding sunroofs have occurred in every month of the year in every part of the country, and the number of exploding sunroof complaints has steadily increased from 1995 through present.[16]

50.     The *Consumer Reports* investigation revealed that while the issue of exploding sunroofs is well known to the auto industry, drivers generally assume their sunroofs are safe. Even though they are aware of the defect, with a few exceptions, automakers, such as Defendants, are not acknowledging or resolving the issue; rather they regularly upsell the Defective Sunroofs as a premium feature in the Class Vehicles.[17]

51.     Features like panoramic sunroofs are often designed into luxury vehicles, such as those manufactured by Defendants.[18]  Automakers have learned that consumers will frequently spend thousands of dollars for luxury packages, including those that contain the Defective Sunroofs.[19]  As such, manufacturers, such as Defendants, are incentivized to sell vehicles containing the Defective Sunroofs as a way to increase margins, as the sunroofs or panoramic moonroofs are typically considered an "upgrade."  For example, when designing a vehicle on BMW's website, in many models that BMW advertises, consumers do not have the option of a panoramic moonroof with a standard package, but rather must upgrade to the "Convenience Tier" to add a panoramic moonroof as an additional feature, increasing the purchase price by thousands of dollars.[20]  Similarly, when designing a new MINI, the Dual-Pane Panoramic

---

[16]     Report at 1, 7.

[17]     Report at 2.

[18]     *See* Report at 8.

[19]     *Id.* at 9.

[20]     *See, e.g.*, *Choose your Features Tier, X1 sDrive28i*, https://www.bmwusa.com /byo.html#!/build/feature/dijuq55z (last visited Dec. 4, 2019) (adding respectively $2,500 or

Sunroof often only becomes available to consumers with the upgraded "Premium Package" or "Signature Package," adding $1,800 or $3,000 to the purchase price.[21]   Defendants profit significantly from upselling these products to unsuspecting members of the Classes.

52.    BMW began installing panoramic sunroofs/moonroofs in certain of the Class Vehicles in or around 2004, generally marketing the panoramic sunroofs/moonroofs as a luxury upgrade.   For example, the BMW X5 xDrive 35i advertises the "[p]anoramic moonroof with fully automatic, 2-piece glass panel, power slide and lift control, wind deflector and power interior sunshade" as a feature adding to the vehicle's "Comfort and convenience[.]"[22] Similarly, the Mini Clubman touts its dual-pane panoramic sunroof with "[a]lmost 11 square feet of glass [that] enhance[s] the view for both front and rear passengers." [23]   According to the Report, experts agree that "[t]he bigger the expanse of glass, the harder to ensure it won't shatter."[24]

---

$2,550 to the X1 sDrive28i's purchase price of $33,900 or $35,200 in 2018 or 2010 models for the "Convenience Tier" which includes the panoramic moonroof as an added feature).

[21]    *See, e.g., Cooper S Hardtop 2 Door, Packages*, http://www.miniusa.com/content/ miniusa/en/tools/learning/build/build.html#/config/coopers/build/1/?year=2018 (last visited Dec. 4, 2019) (demonstrating that the Dual-Pane Panoramic Sunroof is only available in the upgraded "Premium" or "Fully Loaded" Packages, adding $1,800 or $4,750, respectively, to the Cooper S Hardtop 2 Door's purchase price of $28,250).

[22]    *See The X5 xDrive35i, Features & Specs*, https://www.bmwusa.com/vehicles/x-models/x5/x5-xdrive35i.html (last visited Dec. 4, 2019).

[23]    *See The Mini Clubman, Motoring Features*, https://web.archive.org/web/20170 501045143/http://www.miniusa.com/content/miniusa/en/why-mini/programs-and-events/clubman-retail.html (last visited Dec. 4, 2019).

[24]    Report at 2.

53.    To date, American consumers, including members of the Classes, have lodged at least 859 complaints with the federal government about exploding sunroofs in their vehicles.[25] Almost all of the exploding sunroof incidents occur with no warning.[26]

54.    Automakers, such as Defendants, have tried to explain away and conceal the defect, by informing consumers that the exploding sunroofs are caused by a rock or some other foreign object.[27]  However, Tarek Zohdi, a professor of mechanical engineering at University of California, Berkeley, rejects this explanation.[28]  According to Mr. Zohdi, a rock lofted into the air by a vehicle tire would need to reach a height of 10-15 feet and would have to come down at 70-80 miles an hour to break the sunroof.[29]  "There is not a chance in the world that an unintentional rock that is lofted by a vehicle would ever break a sunroof panel," Mr. Zohdi opined.  He further stated that the maximum velocity of a rock coming down would be 25 miles an hour, falling far short of the 70 miles an hour he calculated would be necessary to cause breakage.[30]  It is more likely, according to Mr. Zohdi, that sunroofs are shattering due to the stress caused by changes in temperatures or from fatigue.[31]  In Mr. Zohdi's opinion, "the car manufacturer has the problem; basically it's a manufacturers defect."[32]

---

[25]    *Id.*

[26]    *See* Jennifer Geiger, *Consumer Reports Investigates Exploding Sunroofs,* CARS.COM (October 12, 2017) https://www.cars.com/articles/consumer-reports-investigates-exploding-sunroofs-1420697540165/.

[27]    *See* Jeff Plungis, *Senators Press Auto Industry on Exploding Sunroofs*, CONSUMER REPORTS, (Nov. 15, 2017) https://www.consumerreports.org/car-safety/senators-press-auto-industry-on-exploding-sunroofs/.

[28]    *See* Michael Finney, *UC professor solves shattered sunroof problem*, (Mar. 21, 2011, 12:00 AM) http://abc7news.com/archive/8026317/.

[29]    *See id.*

[30]    *See id.*

[31]    *See id.*

[32]    *See id.*

55.    Based on the increasing number of complaints related to panoramic sunroofs, executive director at the Center for Auto Safety, Jason Levine, says, "Something is going on. Calling it an act of God feels like an old industry playbook for a new car feature. The fact the roof is half glass instead of a quarter glass or no glass doesn't change the responsibility of the industry and the individual automaker to make sure the compartment is as safe as possible."  Mr. Levine added that "[t]he concern has to be for safety first, and then the aesthetics."[33]

56.    Research has shown that when a vehicle's sunroof does shatter, vehicle owners typically bear the cost of repair or replacement as automakers often refuse to cover repair or replacement of sunroofs under the applicable warranties.[34]  As described in the NHTSA complaints herein, Defendants similarly have refused to repair or replace the Defective Sunroofs free of charge for members of the Classes.  Moreover, Defendants have not recalled the Class Vehicles to replace the Defective Sunroofs.

57.    David Friedman, former acting administrator of NHTSA in 2014, and current director of cars and product policy and analysis at Consumers Union, the policy and mobilization division of Consumer Reports, states: "[w]hen you have evidence of a problem like this, regardless of what the standards say, automakers should develop a better approach. . . . They don't need to wait for NHTSA to prod them."[35]

58.    In April 2016, NHTSA investigated Defendants, and twelve other motor vehicle manufacturers.[36]  The Secretary of Transportation issued a General Order to the vehicle

---

[33]    Report at 7.

[34]    Report at 3.

[35]    Report at 4.

[36]    *See In re: Kia Sorento Sunroofs*, EA14-002, "General Order Directed to Motor Vehicle Manufacturers," (U.S. Dept. of Trans. Nat'l Highway Traffic Safety Admin. Apr. 14, 2016). ("NHTSA General Order").

manufacturers as part of NHTSA Investigation No. EA14-002, an investigation into allegations of optional sunroofs shattering unexpectedly.[37]  As a part of the NHTSA General Order, NHTSA demanded the Defendants, and other vehicle manufacturers, file certain reports concerning unexpected sunroof shatter incidents by May 16, 2016.[38]  Such reports were required to, *inter alia*, describe the history of panoramic sunroofs in the vehicles Defendants manufactured, identify and enumerate the total population of vehicles manufactured with a panoramic sunroof as original equipment, provide information regarding the sunroof manufacturer and the standard to which the sunroof was manufactured, and identify the number of incidents involving an allegation that a panoramic sunroof has spontaneously shattered in a vehicle manufactured by Defendants.[39]

59.    In addition to complaints regarding panoramic sunroofs/moonroofs in the Class Vehicles, numerous complaints have been made to NHTSA and other online forums relating to non-panoramic sunroofs/moonroofs in the Class Vehicles.

60.    In November 2017, Senators Blumenthal and Markey sent letters to the automakers, including BMW, asking for answers regarding sunroof materials, design and defects.  The senators gave BMW a December 4, 2017 deadline to provide information on glass suppliers and whether BMW is tracking incidents of exploding sunroofs.  The senators informed BMW: "It is vital that you take steps to assure consumers of the structural integrity of their sunroofs."

61.    No reasonable consumer expects to purchase a vehicle with a Defective Sunroof upgrade that exposes them and their passengers to an exploding or shattering sunroof.  Further,

---

[37]    *See id.*

[38]    *See id.*

[39]    *See id.*

Plaintiffs and members of the Classes do not reasonably expect Defendants to omit or conceal a defect in the Class Vehicles or omit or conceal a known safety risk.  Plaintiffs and members of the Classes had no reasonable way to know that Class Vehicles contained Defective Sunroofs which were defective in materials, workmanship, design and/or manufacture and posed a safety risk.

62.    As alleged herein, Plaintiffs and members of the Classes unknowingly purchased, leased, own, or owned vehicles that contain the Defective Sunroofs and suffered diminished market value and other damages as a direct result of Defendants' material misrepresentations and omissions regarding the standard, quality or grade of the Class Vehicles and/or the existence of the Defective Sunroofs and safety risk.  The fact that the Class Vehicles contain the Defective Sunroofs is material to Plaintiffs and members of the Classes because it diminishes the value of the Class Vehicles and exposes Plaintiffs and Class members (and their passengers) to exploding or shattering sunroofs and an associated safety risk as well as the cost of repair or replacement of the Defective Sunroofs.

63.    As a result of Defendants' material misrepresentations and omissions, including their failure to disclose that the Class Vehicles incorporate the Defective Sunroofs, Defendants have caused Plaintiffs and members of the Classes to suffer actual damages, including but not limited to out-of-pocket expenses and the diminished value of their vehicles.

**B.    Defendants' Knowledge of the Defect in the Defective Sunroofs and Associated Safety Risk**

64.    Defendants fraudulently, intentionally, negligently, and/or recklessly concealed from Plaintiffs and members of the Classes the defect in the Class Vehicles even though Defendants knew or should have known that defects in design, manufacturing, materials, and/or

21

workmanship were causing defects in Class Vehicles if Defendants had adequately tested the Defective Sunroofs in the Class Vehicles.

65.     Knowledge and information regarding the defect in the Defective Sunroofs were in the exclusive and superior possession of Defendants and their dealers, and that information was not provided to Plaintiffs and members of the Classes.  Based on, *inter alia*, pre-production testing, preproduction design or failure mode analysis, production design or failure mode analysis, early consumer complaints made to Defendants' network of exclusive dealers, aggregate warranty data compiled from those dealers, repair order and parts data received from the dealers, consumer complaints to dealers and NHTSA, and testing performed in response to consumer complaints, Defendants were aware (or should have been aware) of the exploding or shattering of the Defective Sunroofs in the Class Vehicles and fraudulently concealed the defect and safety risk from Plaintiffs and members of the Classes.

66.     Defendants knew, or should have known, that the defect in the Defective Sunroofs was material to owners and lessees of the Class Vehicles and was not known or reasonably discoverable by Plaintiffs and members of the Classes before they purchased or leased Class Vehicles, or before the warranties on their Class Vehicles expired.

67.     Defendants had actual knowledge that defects in design, manufacturing, materials and/or workmanship were causing a defect in the Defective Sunroofs shortly after production of the Class Vehicles commenced.  Further, Defendants gained their knowledge of the defect through sources not available to Plaintiffs and members of the Classes.

68.     Notwithstanding Defendants' exclusive and superior knowledge of the defect in the Defective Sunroofs, Defendants failed to disclose the defect to consumers at the time of purchase or lease of the Class Vehicles (or any time thereafter) and continued to sell Class

Vehicles containing the defect through and including the 2018 model year. Rather than disclosing the existence of the Defective Sunroof, including that they are prone to exploding or shattering, and present a safety risk, Defendants have intentionally concealed this risk from consumers, including Plaintiffs and members of the Classes, and failed to recall the Class Vehicles to remedy the defect.

**NHTSA Complaints**

69. Consumers who purchased or leased Class Vehicles have filed numerous complaints with NHTSA, beginning in at least 2002, reporting and detailing the defect in the Defective Sunroofs.

70. Federal law requires Defendants to monitor defects that can cause a safety issue and report them within five (5) days of learning of them. Defendants therefore regularly monitor the NHTSA website and the complaints filed therein in order to comply with their reporting obligations under federal law and were provided knowledge of the defect through these complaints, *inter alia*.[40]

71. Despite these complaints, Defendants have yet to issue a recall or even inform owners and lessees of the defect in the Defective Sunroofs and the associated safety risk. Defendants' deceptive acts, misrepresentations and/or omissions regarding the defect in the Defective Sunroofs create a safety risk for drivers and occupants of the Class Vehicles who may be showered with broken glass from an exploding Defective Sunroof and members of the public who may be involved in accidents with Class Vehicles that experience an exploding or shattering sunroof. The reasonable expectation that the Class Vehicles are safe and reliable to drive (and

---

[40] Complainants must identify themselves and enter detailed contact and vehicle information, which is reviewed and analyzed by NHTSA. NHTSA does not share complainants' personal information with the general public and adds complaints to the public NHTSA database only after removing all personally identifying information.

ride in) is and was material to Plaintiffs and members of the Classes when they purchased or leased their Class Vehicles and at all relevant times.

72.    Below is a sample of consumer complaints made to NHTSA regarding exploding or shattering of Defective Sunroofs:

- **February 12, 2002- 2002 BMW 325i**
  NHTSA ID Number: 758131
  Incident Date February 9, 2002
  Consumer Location BREWSTER, NY
  Vehicle Identification Number WBAEV33432K
  **Summary of Complaint:**
  URGENT - MY 2002 325I'S FIRST SUNROOF GLASS EXPLODED ON ME ON 1/25/02. THE REPLACEMENT GLASS HAS TWO SURFACE HAIRLINE CRACKS AND TWO HAIRLINE CRACKS BENEATH THE SURFACE OF THE GLASS. THIS CANNOT BE AN ISOLATED INCIDENT. PLEASE EXAMINE YOUR SUNROOF CAREFULLY FOR DEFECTS. NO ONE AT BMW IS TAKING THIS SERIOUSLY ENOUGH.*AK

- **March 23, 2006- 2005 BMW X5**
  NHTSA ID Number: 10153549
  Incident Date March 2, 2006
  Consumer Location ERIE, CO
  Vehicle Identification Number 5UXFA93545L
  **Summary of Complaint:**
  I WAS DRIVING DOWN I-25 IN MARCH OF 2006, WHEN THE PANORAMIC SUNROOF OF MY 2005 BMW X5 4.8IS (PURCHASED NEW ON DECEMBER 2, 2005, WHICH ONLY HAVE 5000 MILES ON IT) EXPLODED SUDDENLY AND UNEXPECTEDLY FOR NO REASON WHAT SO EVER. I AM VERY GLAD THAT I DIDN'T HAVE THE SUN SHADE OPEN OR ELSE I WOULD'VE HAD GLASS ALL OVER ME!!!!*JB

- **August 3, 2009- 2008 BMW 3 Series**
  NHTSA ID Number: 10279116
  Incident Date August 2, 2009
  Consumer Location Unknown
  Vehicle Identification Number WBAWB73588P
  **Summary of Complaint:**
  CATASTROPHIC FAILURE OF THE SUNROOF ON MY 3.35I BMW COUPE 2008 MODEL. NO KNOWN CAUSE. IT JUST EXPLODED AND SHOWERED THE PASSENGER COMPARTMENT WITH GLASS SHARDS. *TR

- **March 27, 2013- 2011 BMW 328i**
  NHTSA ID Number: 10504739
  Incident Date March 27, 2013
  Consumer Location CLEARWATER, FL
  Vehicle Identification Number N/A
  **Summary of Complaint:**
  WHILE APPROACHING THE INTERSTATE AND INCREASING IN
  SPEED, DRIVER HEARD LOUD EXPLOSION (LIKE A GUN) COMING
  FROM ABOVE AND STARTED TO FEEL GLASS DEBRIS COMING
  FALL FROM CRACK. THE OUTSIDE TEMPERATURE WAS AROUND 40
  DEGREES FAHRENHEIT AND THERE WERE NO OVERPASSES
  NEARBY WHERE DEBRIS COULD HAVE FALLEN AND NO DEBRIS
  COMING FROM OTHER CARS. WHEN PULLED OVER, THE SUNROOF
  HAD COMPLETELY SHATTERED. *TR

- **June 18, 2013-2012 BMW X5**
  NHTSA ID Number: 10520566
  Incident Date June 12, 2013
  Consumer Location BLAINE, WA
  Vehicle Identification Number: 5UXZW0C58CL
  **Summary of Complaint:**
  WHILE DRIVING AT 70 MPH ON THE FREEWAY, MY SUNROOF
  SPONTANEOUSLY SHATTERED INTO A MILLION PIECES. NO OTHER
  VEHICLES WERE AROUND AND NO FALLING DEBRIS WAS NEARBY.
  THE SUNROOF EXPLODED OUTWARD WITH A LOUD BANG, LIKE A
  GUNSHOT. GLASS RAINED DOWN INSIDE THE CAR AND MY
  PASSENGER AND I WERE CUT WHILE TRYING TO REMOVE PIECES OF
  GLASS FROM THE INTERIOR. *TR

- **August 23, 2013- 2009 BMW 3 Series**
  NHTSA ID Number: 10536990
  Incident Date August 23, 2013
  Consumer Location OTTAWA LAKE, MI
  Vehicle Identification Number: WBAPH77589N
  **Summary of Complaint:**
  SUNROOF EXPLODED UPWARD MAKING A "GUN SHOT" TYPE SOUND
  LEAVING A BASKETBALL SIZED HOLE IN THE ROOF. *TR

- **July 30, 2014- 2010 BMW X5**
  NHTSA ID Number: 10617626
  Incident Date July 9, 2014
  Consumer Location SAN CLEMENTE, CA
  Vehicle Identification Number WBANU5C59AC
  **Summary of Complaint:**
  I WAS TRAVELING ON FREEWAY TO THE AIRPORT WHEN MY WIFE
  AND I HEARD A LOUD BOOM AND SUDDENLY HEARD LOUD

AIRFLOW. I PULLED OFF TO SIDE OF ROAD AND INSPECTED CAR. THE SUNROOF HAD EXPLODED AND SHATTERED. THE CAR TRAVELING BEHIND ME ALSO STOPPED TO INSPECT HIS VEHICLE BECAUSE OF FLYING GLASS. THE CABIN DOOR TO THE SUNROOF HAD LUCKILY HAD BEEN CLOSED SO AS MY WIFE AND I AVOIDED THE FLYING GLASS. WHEN WE RETURNED FROM OUR TRIP I TOOK VEHICLE TO DEALER, THE VEHICLE WAS UNDER WARRANTY. THE DEALER SAID THIS PART WAS NOT COVERED AND WOULD COST $3600 TO REPAIR. WE GOGGLED BMW5 SERIES EXPLODING SUNROOFS AND DISCOVERED WE WERE NOT THE ONLY ONES TO EXPERIENCE EXPLODING SUNROOFS. SURELY BMW KNOWS ABOUT THIS POTENTIALLY GRIEVOUS PROBLEM. WE CALLED BMW NORTH AMERICA AND FILED A COMPLAINT WITH THE RESOLUTION DEPARTMENT. THE NEXT DAY BMW TO MY CHAGRIN WAS WILLING TO PAY 50 PERCENT OF THE REPAIR COST. I EXPECTED FULL COVERAGE. I NEEDED THE CAR BACK AND EXCEPTED OFFER VOWING NEVER TO BUY A BMW AGAIN. I EXPECTED TO BECOME WHOLE AND NOT EXPECTING BMW IGNORING THE PROBLEM THUS ENDANGERING THEIR DRIVERS FOR ECONOMIC REASONS. ONCE AGAIN GOGGLE BMW 5 SERIES EXPLODING SUNROOFS. I TOOK VEHICLE TO LEXUS DEALER AND TRADED IT. I WANTED NOTHING TO DO WITH THAT CAR. UNFORTUNATELY I OWN ANOTHER BMW5. WHAT I WANT FROM NHTSA IS TO INSPECT THE PROBLEM AND I STILL WANT TO BE COMPENSATED FOR THE ENTIRE COST OF THE PROBLEM NOT JUST 50 PERCENT. *TR

- **May 5, 2015- 2007 BMW 3 Series**
  NHTSA ID Number: 10714764
  Incident Date May 5, 2015
  Consumer Location DUNWOODY, GA
  Vehicle Identification Number WBAWB73597P
  **Summary of Complaint:**
  SUNROOF EXPLODED FOR NO APPARENT REASON. WAS MERGING ONTO A HIGHWAY IN THE ONRAMP AT ABOUT 45MPH, VERY BRIGHT AND SUNNY (BUT NOT HOT, MAYBE 75F) DAY. DRIVER SIDE WINDOW WAS OPEN, A/C OFF, SUNROOF WAS CLOSED, SUNSHADE WAS ALSO CLOSED. SUDDENLY I HEAR WHAT BASICALLY SOUNDS LIKE A GUNSHOT RIGHT ABOVE MY HEAD, AND SINCE HAVING ALREADY HEARD ABOUT THIS PHENOMENON HAPPENING ON A CAR FORUM (E90POST.COM) I REGULARLY VISIT, I INSTANTLY GUESSED WHAT HAD HAPPENED. I LOOK IN MY REARVIEW MIRROR AND SEE LARGE PIECES OF MY SUNROOF BOUNCING ALONG ON THE ROAD BEHIND ME. ONCE I ARRIVED AT MY DESTINATION AND GOT OUT OF THE CAR, I SAW THE SUNROOF HAD EXPLODED OUTWARDS. THE BROKEN GLASS WAS CURVED

UP AROUND THE HOLE. FROM THAT SAME FORUM THERE ARE SEVERAL THEORIES FLOATING AROUND, THE ONE MOST PEOPLE SEEM TO AGREE ON AS BEING MOST PLAUSIBLE IS THERE'S A HEAT/PRESSURE DIFFERENCE BETWEEN THE SUNSHADE/SUNROOF AND THE OUTSIDE OF THE CAR. THE NEGATIVE PRESSURE ON THE OUTSIDE + THE INCREASE OF HEAT UNDER THE GLASS IS ENOUGH TO STRESS WHATEVER IMPERFECTION MIGHT HAVE ALREADY BEEN IN THE GLASS AND LITERALLY SUCK IT OUT. *TR

- **October 26, 2016- 2009 BMW 3 Series**
  NHTSA ID Number: 10919184
  Incident Date October 26, 2016
  Consumer Location Unknown
  Vehicle Identification Number WBAWB73529P
  **Summary of Complaint:**
  I WAS DRIVING ON THE HIGHWAY WHEN ALL OF THE SUDDEN I HEARD AND EXPLOSION. ACTUALLY MY SUNROOF BURST IN TO PIECES WITHOUT ANY REASON. *TR

- **December 8, 2016- 2008 BMW 3 Series**
  NHTSA ID Number: 10933957
  Incident Date November 18, 2016
  Consumer Location ANCHORAGE, AK
  Vehicle Identification Number: WBAWC73528E
  **Summary of Complaint:**
  NOVEMBER 18, 2016, AT APPROXIMATELY 7:45 AM, I WAS DRIVING ON SEWARD HIGHWAY TOWARDS WEST INTERNATIONAL AIRPORT ROAD IN ANCHORAGE, ALASKA AND ALL OF A SUDDEN MY SUNROOF EXPLODED AND GLASS SHARDS FELL ABOVE MY HEAD AND ALL OVER THE INTERIOR OF MY CAR. I CALLED BMW CORPORATE FOR A RESOLUTION BUT THEY INITIALLY DENIED MY CLAIM SAYING IT MUST HAVE BEEN HIT WITH A ROCK AND I SHOULD BE CALLING MY CAR INSURANCE INSTEAD. I CONTACTED BMW CORPORATE FOR THE SECOND TIME. THEY WERE ABLE TO ESCALATE MY ISSUE AND OFFERED ME A "GOODWILL" OFFER TO REPLACE ALL PARTS INVOLVED FREE OF CHARGE ON MY ISSUE, BUT NOT LABOR. LABOR CHARGE IS APPROXIMATELY $900 AND THEY REQUIRE IT TO BE DONE AT THE DEALERSHIP. IT IS ABSURD! I'M NOT PAYING FOR A DAMAGE WHICH I'M NOT RESPONSIBLE. IT SEEMS LIKE THEY ARE NOT CONSIDERING THIS AS A BIG PROBLEM AND RATHER DENYING DEFECTS ON THEIR SUNROOFS. I WAS FURIOUS AND EXCLAIMED THAT IT IS A SAFETY ISSUE AND I COULD HAVE BEEN INJURED, COULD HAVE BEEN KILLED, OR WORSE, COULD HAVE KILLED SOMEONE ELSE. WITH THEIR "GOODWILL" OFFER AND THE ABSURD LABOR CHARGE, I DON'T THINK I COULD GET THIS ISSUE RESOLVED WITHOUT THE HELP OF NHTSA TO PRESS

BMW TO DO FURTHER INVESTIGATION. THIS ISSUE HAS TO BE FIXED ASAP BEFORE SOMEONE GETS KILLED. *TR

- **February 7, 2017- 2014 BMW X5**
  NHTSA ID Number: 10950065
  Incident Date January 14, 2017
  Consumer Location LAKE OSWEGO, OR
  Vehicle Identification Number N/A
  **Summary of Complaint:**
  TL* THE CONTACT OWNS A 2014 BMW X5. WHILE DRIVING AT AN UNKNOWN SPEED, AN ABNORMAL BANG SOUND EMITTED FROM THE VEHICLE. THE CONTACT PULLED OVER AND DISCOVERED THAT THE SUN ROOF EXPLODED FROM WITHIN THE VEHICLE. THE CONTACT AND THE DRIVER SUSTAINED HEARING LOSS THAT REQUIRED MEDICAL ATTENTION. THE VEHICLE WAS TAKEN TO THE DEALER AND THE SUN ROOF WAS REPLACED; HOWEVER, THE CAUSE OF THE FAILURE WAS NOT DETERMINED. THE MANUFACTURER WAS NOT NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE AND VIN WERE UNKNOWN.

- **April 18, 2017- 2016 BMW X5**
  NHTSA ID Number: 10979007
  Incident Date April 13, 2017
  Consumer Location Unknown
  Vehicle Identification Number N/A
  **Summary of Complaint:**
  WHILE DRIVING DOWN THE HIGHWAY, WITHOUT OVERPASSES OR CLIFFS NEAR, THE SUNROOF EXPLODED OUTWARD, AND RAINING GLASS DOWN ON TO THE PASSENGERS. THE TEMPERATURE WAS MODERATE. VEHICLE HAS APPROX 6000 MILES.

73.    In addition to NHTSA complaints, there are multiple blogs and websites where consumers have complained about experiencing an exploding or shattering Defective Sunroof in one of the Class Vehicles.

## V.    FURTHER ALLEGATIONS

74.    Defendants failed to inform Class Vehicle owners and lessees prior to purchase or lease of the Class Vehicles or during the express warranty period that the Defective Sunroofs were defective and may explode or shatter.  Defendants misrepresented by affirmative conduct

and/or by omission and/or by fraudulent concealment the existence of the defect in the Defective Sunroofs in the Class Vehicles.

75.    Defendants also failed to inform Class Vehicle owners and lessees at the time of purchase or lease or during the express warranty period that the Defective Sunroofs in their Class Vehicles had been inadequately tested prior to the sale or lease of the Class Vehicles.

76.    By as early as 2002, Defendants knew that the Class Vehicles contained Defective Sunroofs that could explode or shatter.  Despite this knowledge, Defendants continued to sell Class Vehicles with Defective Sunroofs.

77.    On information and belief, certain Class members were informed by Defendants that they would not repair or replace the Defective Sunroofs free of charge as promised in the applicable warranties.

78.    Defendants have refused to fully reimburse or compensate Class members for vehicle repair expenses or provide a suitable substitute or replacement vehicles.

79.    Despite actual and constructive knowledge of defects in the Defective Sunroofs, Defendants breached the applicable express warranties by failing to cure Class Vehicle defects within the express warranty period free of charge.

80.    Through no fault of their own, Plaintiffs and members of the Classes had no knowledge of the defect in the Defective Sunroofs prior to purchasing or leasing the Class Vehicles or during the applicable express warranty periods.

81.    Defendants' misrepresentations and fraudulent statements were received by Plaintiffs and members of the Classes prior to and at the point of their Class Vehicle purchase or lease, including misrepresentations and omissions in advertising, the owner's manual and the New Vehicle Limited Warranty pamphlet.  These representations and omissions created a

reasonable belief that the Class Vehicles did not contain a defect in the Defective Sunroofs, and that Defendants would repair or replace any defect in Class Vehicles under the applicable warranties.

82.     Defendants fraudulently omitted material facts concerning Class Vehicles, including that the defect existed in the Defective Sunroofs, in order to deceive Plaintiffs and members of the Classes and sell or lease additional Class Vehicles.  Defendants knew or should have known that the defect was material to Plaintiffs and Class members.

83.     Had Defendants informed Plaintiffs and members of the Classes of the defect in the Defective Sunroofs prior to sale or lease of the Class Vehicles, Plaintiffs and members of the Classes would not have purchased or leased their respective Class Vehicles or would have paid substantially less.  Had Defendants informed Plaintiffs and members of the Classes of the defect in the Defective Sunroofs during the warranty period, Plaintiffs and members of the Classes would have had the Defective Sunroofs replaced free of charge under their applicable warranties.

84.     As a proximate and direct result of Defendants' unfair and deceptive acts and practices, Plaintiffs and members of the Classes purchased, leased, own or owned Class Vehicles with Defective Sunroofs and have suffered actual damages and/or injury in fact, including, *inter alia*: (1) out-of-pocket monies for diagnosis, repair and/or replacement of the Defective Sunroofs; (2) the difference in value between the Class Vehicles promised and warranted, and the Class Vehicles containing the Defective Sunroofs; (3) time lost associated with the repair or replacement of the Defective Sunroofs and/or expenses related to obtaining alternative transportation during the repair or replacement of the Defective Sunroofs; (4) future repair or replacement of the Defective Sunroofs; and/or (5) the diminished resale value of the Class Vehicles containing the Defective Sunroofs.

## VI.    TOLLING OF THE STATUTE OF LIMITATIONS

85.    Any applicable statute of limitations has been tolled by Defendants' knowing and active concealment of the defect in the Defective Sunroofs and the misrepresentations and omissions alleged herein.  Through no fault or lack of diligence, Plaintiffs and members of the Classes were deceived regarding the defect in the Defective Sunroofs and could not reasonably discover the latent nature of the defect.

86.    Plaintiffs and members of the Classes could not reasonably discover Defendants' deception with respect to the defect in the Defective Sunroofs in the Class Vehicles prior to experiencing an exploding or shattering Defective Sunroof.  As alleged herein, the existence of the Defective Sunroofs and corresponding safety risk were material to Plaintiffs and members of the Classes at all relevant times.  Within the time period of any applicable statutes of limitations, Plaintiffs and members of the Classes could not have discovered through the exercise of reasonable diligence that Defendants were concealing the defect in the Defective Sunroofs.

87.    Plaintiffs and members of the Classes did not discover and did not know of any facts that would have caused a reasonable person to suspect that Defendants were concealing a latent defect and/or that the Class Vehicles contained Defective Sunroofs prone to exploding or shattering and an associated safety risk.

88.    At all times, Defendants are and were under a continuous duty to disclose to Plaintiffs and members of the Classes the true standard, quality and grade of the Class and to disclose the defect in the Defective Sunroofs and potential safety risk associated with the exploding or shattering of the Defective Sunroofs.

89.    Defendants knowingly, actively and affirmatively concealed the facts alleged herein including the defect in the Defective Sunroofs.  Plaintiffs and members of the Classes reasonably relied on Defendants' knowing, active and affirmative concealment.

90.    Defendants fraudulently attributed the exploding or shattering Defective Sunroofs to other factors and/or exculpating conditions for which Defendants had no responsibility when, in reality, the Defective Sunroofs were exploding or shattering due to defects in design, manufacture, materials, and/or workmanship.

91.    For these reasons, all applicable statutes of limitation have been tolled based on the discovery rule and Defendants' fraudulent concealment and Defendants are estopped from relying on any statutes of limitations in defense of this action.

**VII.    CLASS ACTION ALLEGATIONS**

92.    Plaintiffs bring this action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(1), (b)(2) and/or (b)(3) on behalf of themselves and all members of the proposed Class and Sub-Classes defined as follows:

> **Nationwide Class**: All persons or entities in the United States that purchased, leased, own or owned a Class Vehicle (the "Nationwide Class" or "Class");
>
> **Alabama Sub-Class**:  All persons or entities that purchased or leased a Class Vehicle in the State of Alabama and all persons or entities in the State of Alabama that purchased, leased, own, or owned a Class Vehicle (the "Alabama Sub-Class");
>
> **Arizona Sub-Class**: All persons or entities that purchased or leased a Class Vehicle in the State of Arizona and all persons or entities in the State of Arizona that purchased, leased, own, or owned a Class Vehicle (the "Arizona Sub-Class");
>
> **California Sub-Class**: All persons or entities that purchased or leased a Class Vehicle in the State of California and all persons or entities in the State of California that purchased, leased, own, or owned a Class Vehicle (the "California Sub-Class");
>
> **Song-Beverly Sub-Class**: All persons or entities that purchased or leased a Class Vehicle in the State of California (the "Song-Beverly Sub-Class") (together with the California Sub-Class, the "Sub-Classes"); and
>
> **Georgia Sub-Class**: All persons or entities that purchased or leased a Class Vehicle in the State of Georgia and all persons or entities in the State of Georgia that purchased, leased, own, or owned a Class Vehicle (the "Georgia Sub-Class").

32

93.    Excluded from the Class and Sub-Classes are Defendants and their parents, subsidiaries and corporate affiliates, officers, directors, employees, assigns, and successors, the court, court staff, Defendants' counsel, and all respective immediate family members of the excluded entities described above.  Also excluded from the Class and Sub-Classes are any and all claims involving personal injury.  Plaintiffs reserve the right to revise the definition of the Class and Sub-Classes based upon subsequently discovered information and reserves the right to establish additional Sub-Classes where appropriate.  The Class and Sub-Classes are collectively referred to herein as the "Classes."

94.    The Classes are so numerous that individual joinder of all potential members is impracticable.  Plaintiffs believe that there are at least thousands of proposed members of the Classes throughout the United States.

95.    Common questions of law and fact exist as to all members of the Classes and predominate over any issues solely affecting individual members of the Classes.  The common and predominating questions of law and fact include, but are not limited to:

(a)    Whether the Defective Sunroofs installed in the Class Vehicles are prone to exploding or shattering;

(b)    Whether the Defective Sunroofs installed in the Class Vehicles contain a design defect and/or a defect in material, manufacturing and/or workmanship;

(c)    Whether the Defective Sunroofs installed in the Class Vehicles present a safety risk;

(d)     Whether Defendants knew or should have known that the Defective Sunroofs installed in the Class Vehicles are defective and/or prone to exploding or shattering and/or present a safety risk;

(e)     Whether Defendants had a duty to disclose that the Defective Sunroofs installed in the Class Vehicles are defective and/or prone to exploding or shattering and/or present a safety risk;

(f)     Whether Defendants breached their duty to disclose that the Defective Sunroofs installed in the Class Vehicles are defective and/or prone to exploding or shattering and/or present a safety risk;

(g)     Whether Defendants intentionally and knowingly falsely misrepresented, concealed, suppressed and/or omitted material facts including the fact that the Defective Sunroofs installed in the Class Vehicles are defective and/or prone to exploding or shattering and/or present a safety risk;

(h)     Whether Defendants negligently or falsely misrepresented or omitted material facts including the fact that the Defective Sunroofs installed in the Class Vehicles are defective and/or prone to exploding or shattering and/or present a safety risk;

(i)     Whether Defendants made material misrepresentations and/or omissions concerning the standard, quality or grade of the Class Vehicles and the defect in the Defective Sunroofs;

(j)     Whether Defendants breached their express warranties in that Class Vehicles were defective with respect to manufacture, workmanship and/or materials;

(k)     Whether Defendants breached their implied warranties in that Class Vehicles were defective with respect to design, manufacture, workmanship, and/or materials;

(l)     Whether Defendants violated the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*;

(m)     Whether members of the Classes would have had the Defective Sunroofs repaired or replaced if Defendants had disclosed, prior to the expiration of the warranty periods, that the Defective Sunroofs were defective and/or prone to premature exploding or shattering;

(n)     Whether Defendants actively concealed or omitted material facts from Plaintiffs and members of the Classes in order to, *inter alia,* sell more Class Vehicles and/or transfer the costs associated with repair or replacement of the Defective Sunroofs to Plaintiffs and the Classes;

(o)     Whether Defendants committed unfair and deceptive business act practices by failing to inform owners and lessees of Class Vehicles prior to purchase and/or lease and/or during the express warranty period that the Defective Sunroofs were defective and prone to exploding or shattering, and/or that this defect posed a significant safety risk;

(p)     Whether damages, restitution, equitable, injunctive, compulsory, or other relief is warranted; and

(q)     Whether the court should establish a constructive trust funded by the benefits conferred upon the Defendants by their wrongful and unlawful conduct.

96.     Plaintiffs' claims are typical of the claims of the Class members Plaintiffs seek to represent.  As alleged herein, Plaintiffs and the Classes sustained damages arising out of the same illegal actions and conduct by Defendants.

97.     Plaintiffs are willing and prepared to serve the Classes in a representative capacity with all of the obligations and duties material thereto.  Plaintiffs will fairly and adequately protect the interests of the Classes and have no interests adverse to or in conflict with the interests of the other members of the Classes.

98.     Plaintiffs' interests are co-extensive with and are not antagonistic to those of absent members within the Classes.  Plaintiffs will undertake to represent and protect the interests of absent members within the Classes and will vigorously prosecute this action.

99.     Plaintiffs have engaged the services of the undersigned counsel.  Counsel is experienced in complex litigation, will adequately prosecute this action, and will assert and protect the rights of, and otherwise represent, Plaintiffs and absent members of the Classes.

100.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.  Plaintiffs know of no difficulty to be encountered in the management of this litigation that would preclude its maintenance as a class action.

101.    Class action status is warranted under Rule 23(b)(3) because questions of law or fact common to the members of the Classes predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

102.    The Classes may also be certified under Rule 23(b)(1)(A) and (B) because the prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications with respect to individual members of the Classes, which

would establish incompatible standards of conduct for Defendants, would be dispositive of the interests of nonparties to the individual adjudications, and would substantially impair the ability of such nonparties to protect their interests.

103.    The Classes may also be certified under Rule 23(b)(2) because Defendants have acted on grounds generally applicable to the Classes, thereby making it appropriate to award final injunctive relief or corresponding declaratory relief with respect to the Classes.

104.    The interest of members within the Classes in individually controlling the prosecution of separate actions is theoretical and not practical.  The Classes have a high degree of similarity and are cohesive, and Plaintiffs anticipate no difficulty in the management of this matter as a class action.

## VIII.   CLAIMS FOR RELIEF

**COUNT I**
**FRAUD AND/OR FRAUD BY OMISSION**
**(ON BEHALF OF THE ALABAMA SUB-CLASS)**

105.    Plaintiff Ferguson incorporates and realleges each preceding paragraph as though fully set forth herein.

106.    Plaintiff Ferguson brings this count on behalf of himself and the members of the Alabama Sub-Class.

107.    Defendants intentionally and knowingly falsely misrepresented, concealed, suppressed and/or omitted material facts including the standard, quality or grade of the Class Vehicles and the fact that the Defective Sunroofs installed in Class Vehicles are defective and prone to exploding or shattering, exposing drivers, occupants and members of the public to a safety risk.  Defendants intended that Plaintiff Ferguson and members of the Alabama Sub-Class rely on Defendants' misrepresentations and omissions.   As a direct result of Defendants' fraudulent conduct, members of the Alabama Sub-Class have suffered actual damages.

108. Defendants owed a duty to disclose the Defective Sunroofs and their corresponding safety risk to Plaintiff Ferguson and members of the Alabama Sub-Class because Defendants possessed superior and exclusive knowledge regarding the defect and the risk associated with the Defective Sunroofs. Further, Defendants had a duty to disclose any information relating to the safety, quality, functionality and reliability of Class Vehicles because they consistently marketed the Class Vehicles as safe. Once Defendants made representations to the public about safety, quality, functionality, and reliability, Defendants were under a duty to disclose these omitted facts, because where one does speak one must speak the whole truth and not conceal any facts which materially qualify those facts stated. One who volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud.

109. Rather than disclose the defect, Defendants intentionally and knowingly falsely misrepresented, concealed, suppressed and/or omitted material facts, including the standard, quality or grade of the Class Vehicles and the fact that the Defective Sunroofs installed in the Class Vehicles are defective and expose drivers and occupants to exploding or shattering Defective Sunroofs, in order to sell additional Class Vehicles and avoid the cost of repair or replacement of the Defective Sunroofs.

110. As a result of Defendants' failure to disclose to members of the Classes the material fact that the Defective Sunroofs installed in Class Vehicles are defective and prone to exploding or shattering, owners and lessees of Class Vehicles are required to spend hundreds or thousands of dollars to repair or replace the Defective Sunroofs and/or other vehicle parts damaged during the exploding or shattering of the Defective Sunroofs, or sell their vehicles at a substantial loss. The fact that the Defective Sunroofs installed in the Class Vehicles are defective and prone to exploding or shattering is material because no reasonable consumer

expects that he or she will have to spend hundreds or thousands of dollars for diagnosis, repair or replacement the Defective Sunroofs and because Plaintiff Ferguson and members of the Alabama Sub-Class had a reasonable expectation that the Class Vehicles would not suffer from exploding or shattering Defective Sunroofs that would present a safety risk.

111.    The fact that the Defective Sunroofs installed in the Class Vehicles are defective and prone to exploding or shattering is also material because the sunroofs present a safety risk and place drivers and occupants at risk of serious injury or death.  When the Defective Sunroofs explode or shatter, drivers and occupants may be sprayed with glass and injured.  Drivers and occupants of the Class Vehicles are also at risk for collisions caused by driver distraction as a result of an exploding or shattering Defective Sunroof, and the general public is also at risk for being involved in an accident with a Class Vehicle.

112.    Plaintiff Ferguson and members of the Alabama Sub-Class would not have purchased and/or leased the Class Vehicles but for Defendants' omissions and concealment of material facts regarding the nature and quality of the Class Vehicles and existence of the defect in the Defective Sunroofs, would have paid less for the Class Vehicles, or would have had the Defective Sunroofs replaced during the applicable warranty periods.

113.    Defendants knew their false misrepresentation, concealment and suppression of material facts was false and misleading and knew the effect of concealing those material facts. Defendants knew their concealment and suppression of the defect in the Defective Sunroofs would sell more Class Vehicles and would discourage Plaintiff Ferguson and members of the Alabama Sub-Class from seeking replacement or repair of the Defective Sunroofs within the warranty periods.  Further, Defendants intended to induce Plaintiff Ferguson and members of the Alabama Sub-Class into purchasing or leasing the Class Vehicles and discourage them from

seeking replacement or repair of the Defective Sunroofs within the warranty periods, thereby unlawfully transferring the cost of repair or replacement from Defendants to Plaintiff Ferguson and members of the Alabama Sub-Class, in order to decrease costs and increase profits.

114.    In connection with the purchase or lease of each of the Class Vehicles, Defendants provided warranty coverage for the Class Vehicles under one or more manufacturer's warranties.  For example, Defendants currently provide a New Vehicle Limited Warranty which includes coverage for defects in materials or workmanship to the first retail purchaser and each subsequent purchaser for 4 years or 50,000 miles, whichever occurs first.  Under the warranties provided to Plaintiff Ferguson and members of the Alabama Sub-Class, Defendants promised to repair or replace covered defective parts arising out of defects in materials and/or workmanship, including the Defective Sunroofs, at no cost to owners and lessees of the Class Vehicles.

115.    Although Defendants informed Plaintiff Ferguson and members of the Alabama Sub-Class that they would stand behind the quality and reliability of the Class Vehicles and repair or remedy any issues that arose during the warranty periods, Defendants knew (at the time of sale or lease and thereafter) that the Class Vehicles contained a defect in the Defective Sunroofs, concealed the defect, and never intended to repair or replace the Defective Sunroofs during the warranty periods.  To date, Defendants have not provided Plaintiffs or members of the Classes with a repair or remedy for the Defective Sunroofs, and have not offered to replace the Defective Sunroofs in Class Vehicles.

116.    Defendants acted with malice, oppression and fraud.

117.    Plaintiff Ferguson and members of the Alabama Sub-Class reasonably relied upon Defendants' knowing, affirmative and active false representations, concealment and omissions. As a direct and proximate result of Defendants' false representations, omissions and active

concealment of material facts regarding the defect in the Defective Sunroofs, Plaintiff Ferguson and members of the Alabama Sub-Class have suffered actual damages in an amount to be determined at trial.

## COUNT II
## BREACH OF EXPRESS WARRANTY
### ALA. CODE §§ 7-2-313, 7-2A-103, AND 7-2A-210
### (ON BEHALF OF THE ALABAMA SUB-CLASS)

118.    Plaintiff Ferguson incorporates and realleges each preceding paragraph as though fully set forth herein.

119.    Plaintiff Ferguson brings this count on behalf of himself and the members of the Alabama Sub-Class.

120.    Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Ala. Code § 7-2-104(1), and "sellers" of motor vehicles under § 7-2-103(1)(d).

121.    With respect to leases, Defendants are and were at all relevant times lessors of motor vehicles as defined under Ala. Code § 7-2A-103(1)(p).

122.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Ala. Code § 7-2-105(1).

123.    In connection with the purchase or lease of each of the Class Vehicles, Defendants provide warranty coverage for the Class Vehicles under one or more manufacturer's warranties.  For illustrative purposes, Defendants currently provide a New Vehicle Limited Warranty which includes coverage for defects in materials or workmanship to the first retail purchaser and each subsequent purchaser for 4 years or 50,000 miles, whichever occurs first. Under warranties provided to members of the Classes, Defendants promised to repair or replace covered defective parts arising out of defects in materials and/or workmanship, including the Defective Sunroofs, at no cost to owners and lessees of the Class Vehicles.  However, on

information and belief, Defendants have concealed the defect in the Defective Sunroofs by, *inter alia*, blaming the damage on rocks or other foreign matter, and refusing to provide warranty coverage.

124.    Defendants' warranties formed a basis of the bargain that was reached when Plaintiff Ferguson and members of the Alabama Sub-Class purchased or leased their Class Vehicles.

125.    The defect in the Defective Sunroofs existed in the Class Vehicles at the time of sale or lease and within the warranty periods but Plaintiff Ferguson and members of the Alabama Sub-Class had no knowledge of the existence of the defect, which was known and concealed by Defendants.  Despite the applicable warranties, Defendants failed to inform Plaintiff Ferguson and members of the Alabama Sub-Class that the Class Vehicles contained the defect in the Defective Sunroofs during the warranty periods in order to wrongfully transfer the costs of repair or replacement of the Defective Sunroofs to Plaintiff Ferguson and members of the Alabama Sub-Class.

126.    Because of the defect in the Defective Sunroofs, Class Vehicles are not safe and reliable and owners and lessees of these vehicles have lost confidence in the ability of Class Vehicles to perform the function of safe reliable transportation.

127.    Plaintiff Ferguson and members of the Alabama Sub-Class could not have reasonably discovered the defect in the Defective Sunroofs prior to the Defective Sunroofs exploding or shattering.

128.    Defendants breached the express warranty promising to repair and correct a manufacturing defect or defects in materials or workmanship of any parts they supplied.

129.   On information and belief, Defendants have not repaired or replaced the Defective Sunroofs free of charge for Plaintiff Ferguson and members of the Alabama Sub-Class despite the defect in the Defective Sunroofs in the Class Vehicles at the time of sale or lease, or within the applicable warranty periods.

130.   Defendants further breached their express warranties by selling Class Vehicles that were defective with respect to materials, workmanship, and manufacture when Defendants knew the Defective Sunroofs were defective and had an associated safety risk.

131.   Class Vehicles were not of merchantable quality and were unfit for the ordinary purposes for which passenger vehicles are used because of materials, workmanship, and manufacture defects which cause exploding or shattering Defective Sunroofs which do not perform as warranted.

132.   Defendants were provided notice of the defect in the Defective Sunroofs by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA, and through their own testing.  Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here because Defendants have known of and concealed the Defective Sunroofs and, on information and belief, have refused to repair or replace the Defective Sunroofs for Class members free of charge within or outside of the warranty periods despite the defect's existence at the time of sale or lease of the Class Vehicles, and within the applicable warranty periods.

133.   Defendants were further provided notice of their breach of express warranties by Plaintiff Ferguson when he called Century BMW in Huntsville, Alabama his Class Vehicle on or about May 5, 2019.  Upon information and belief, Century BMW is an authorized dealer of Defendants and their duly authorized agent to perform warranty repairs.  Century BMW did not

respond to his call and did not repair his Class Vehicle.  Plaintiff Ferguson also provided written notice to Defendants via letter on September 13, 2019.  Despite these notices, Defendants did not cure their breach of written warranties and failed to provide a suitable repair or replacement of the Defective Sunroof free of charge within a reasonable time.

134.    Any attempt by Defendants to disclaim or limit recovery to the terms of the express warranties is unconscionable and unenforceable here.    Specifically, Defendants' warranty limitation is unenforceable because they knowingly sold or leased a defective product without informing consumers about the defect.    The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and members of the Classes. Among other things, Plaintiff Ferguson and members of the Alabama Sub-Class did not determine these time limitations, the terms of which unreasonably favored Defendants.  A gross disparity in bargaining power existed between Defendants and members of the Classes, and Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the Defective Sunroofs are prone to exploding or shattering.

135.    Further, the limited warranty promising to repair and/or correct a manufacturing defect fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff Ferguson and members of the Alabama Sub-Class whole because, on information and belief, Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

136.    Defendants knew that the Class Vehicles were inherently defective and did not conform to their warranties and Plaintiff Ferguson and members of the Alabama Sub-Class were induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

137.    Plaintiff Ferguson and members of the Alabama Sub-Class have been excused from performance of any warranty obligations as a result of Defendants' conduct described herein.

138.    As a direct and proximate result of Defendants' breach of express warranties, Plaintiff Ferguson and members of the Alabama Sub-Class have been damaged in an amount to be determined at trial.

139.    Finally, because of Defendants' breach of express warranty as set forth herein, Plaintiff Ferguson and members of the Alabama Sub-Class assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to Plaintiff Ferguson and members of the Alabama Sub-Class of the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

## COUNT III
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### ALA. CODE §§ 7-2-314, 7-2A-103, AND 7-2A-212
### (ON BEHALF OF THE ALABAMA SUB-CLASS)

140.    Plaintiff Ferguson incorporates and realleges each preceding paragraph as though fully set forth herein.

141.    Plaintiff Ferguson brings this count on behalf of himself and the members of the Alabama Sub-Class.

142.    Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Ala. Code §§ 7-2-104(1) and 7-2A-103(3), and "sellers" of motor vehicles under § 7-2-103(1)(d).

143.    With respect to leases, Defendants are and were at all relevant times lessors of motor vehicles as defined under Ala. Code § 7-2A-103(1)(p).

144.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Ala. Code §§ 7-2-105(1) and 7-2A-103(1)(h).

145.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to Ala. Code §§ 7-2-314 and 7-2A-212.

146.    Plaintiff Ferguson and members of the Alabama Sub-Class purchased or leased the Class Vehicles from Defendants by and through Defendants' authorized agents for retail sales, or were otherwise expected to be the eventual purchasers of the Class Vehicles when bought from a third party.  At all relevant times, Defendants were the manufacturers, distributors, warrantors, and/or sellers of Class Vehicles. Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased.

147.    Defendants impliedly warranted that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used.

148.    The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose of providing safe and reliable transportation.  The Class Vehicles contain an inherent defect in the Defective Sunroofs (at the time of sale or lease and thereafter) and present an undisclosed safety risk to drivers and occupants. Thus, Defendants breached their implied warranty of merchantability.

149.    Defendants cannot disclaim their implied warranties as they knowingly sold or leased a defective product.

150.    Defendants were provided notice of the defect in the Defective Sunroofs by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA, and through their own testing.  Affording Defendants a reasonable opportunity to cure

their breach of implied warranties would be unnecessary and futile here because Defendants have known of and concealed the defect in the Defective Sunroofs and, on information and belief, have refused to repair or replace the Defective Sunroofs free of charge within or outside of the warranty periods despite the defect's existence at the time of sale or lease of the Class Vehicles.

151.    Defendants were further provided notice of their breach of implied warranties by Plaintiff Ferguson when he called Century BMW in Huntsville, Alabama his Class Vehicle on or about May 5, 2019.  Upon information and belief, Century BMW is an authorized dealer of Defendants and their duly authorized agent to perform warranty repairs.  Century BMW did not respond to his call and did not repair his Class Vehicle.  Plaintiff Ferguson also provided written notice to BMW NA via letter on September 13, 2019.  Despite these notices, Defendants did not cure their breach of implied warranties and failed to provide a suitable repair or replacement of the Defective Sunroof free of charge within a reasonable time.

152.    As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiff Ferguson and members of the Alabama Sub-Class have been damaged in an amount to be proven at trial.

153.    Any attempt by Defendants to disclaim or limit the implied warranty of merchantability vis-à-vis consumers is unconscionable and unenforceable here.  Specifically, Defendants' warranty limitation is unenforceable because they knowingly sold or leased a defective product without informing consumers about the defect.  The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and members of the Classes.  Among other things, Plaintiff Ferguson and members of the Alabama Sub-Class did not determine these time limitations, the terms of which unreasonably favored

Defendants.  A gross disparity in bargaining power existed between Defendants and members of the Classes, and Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the Defective Sunroofs were defective and posed a safety risk during the applicable warranty periods.

154.    Further, as manufacturers of consumer goods, Defendants are precluded from excluding or modifying an implied warranty of merchantability or limiting consumer remedies for breach of this warranty.

155.    Plaintiff Ferguson and members of the Alabama Sub-Class have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Defendants' conduct described herein.

156.    The Class Vehicles are not safe and reliable and owners and lessees of these vehicles have lost confidence in the ability of Class Vehicles to perform the function of safe reliable transportation without the likelihood of unanticipated sudden exploding or shattering of the Defective Sunroofs.  Defendants are estopped by their conduct, as alleged herein, from disclaiming any and all implied warranties with respect to the Defective Sunroofs in Class Vehicles.

157.    The applicable statute of limitations for the implied warranty claim has been tolled by the discovery rule, fraudulent concealment and the terms of the express warranty.

**COUNT IV**
**VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT ("MMWA"),**
**15 U.S.C. § 2301 *et seq.***
**(ON BEHALF OF THE NATIONWIDE CLASS OR, ALTERNATIVELY, ON BEHALF OF THE ALABAMA SUB-CLASS)**

158.    Plaintiff Ferguson incorporates and realleges each preceding paragraph as though fully set forth herein.

159.    Plaintiff Ferguson brings this count on behalf of himself and the Nationwide Class or, alternatively, on behalf of the Alabama Sub-Class.

160.    Plaintiff Ferguson satisfies the MMWA jurisdictional requirement because he alleges diversity jurisdiction under CAFA, 28 U.S.C. § 1332(d)(2).

161.    Plaintiff Ferguson and members of the Classes are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

162.    Defendants are "supplier[s]" and "warrantor[s]" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

163.    The Class Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

164.    The MMWA provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty. *See* 15 U.S.C. § 2310(d)(1).

165.    Defendants provided Plaintiff Ferguson and members of the Classes with one or more express warranties, which are covered under 15 U.S.C. § 2301(6).  In connection with the purchase or lease of each of the Class Vehicles, Defendants provide warranty coverage for the Class Vehicles under one or more manufacturer's warranties.  For illustrative purposes, Defendants currently provide a New Vehicle Limited Warranty which includes coverage for defects in materials or workmanship to the first retail purchaser and each subsequent purchaser for 4 years or 50,000 miles, whichever occurs first.  Under warranties provided to members of the Classes, Defendants promised to repair or replace covered defective parts arising out of defects in materials and/or workmanship, including the Defective Sunroofs, at no cost to owners and lessees of the Class Vehicles.  However, on information and belief, Defendants have concealed the defect in the Defective Sunroofs by, *inter alia*, blaming the damage on rocks or

other foreign matter, and refusing to provide warranty coverage within or outside of the applicable warranty periods.

166.    Plaintiff Ferguson and members of the Classes experienced the defect in the Defective Sunroofs within the warranty periods but Defendants failed to inform Plaintiff Grewal and members of the Classes of the existence of the Defective Sunroofs and associated safety risk, and failed to provide a suitable repair or replacement of the Defective Sunroofs free of charge within a reasonable time.

167.    Defendant BMW NA was provided notice by letter dated March 28, 2019 that Plaintiffs would pursue a claim under the MMWA on behalf of a class.

168.    Any attempt by Defendants to disclaim or limit their express or implied warranties is unconscionable and unenforceable here.    Specifically, Defendants' warranty limitations are unenforceable because they knowingly sold or leased a defective product without informing consumers about the defect.    The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and members of the Classes.    Among other things, Plaintiff Ferguson and members of the Classes did not determine these time limitations, the terms of which unreasonably favored Defendants.    A gross disparity in bargaining power existed between Defendants and members of the Classes, and Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease.

169.    The Class Vehicles' implied warranties are covered under 15 U.S.C. § 2301(7).

170.    Defendants breached these warranties by misrepresenting the standard, quality or grade of the Class Vehicles and failing to disclose and fraudulently concealing the existence of the defect in the Defective Sunroofs.    Without limitation, the Class Vehicles share a common

defect in design, material, manufacturing and/or workmanship that is prone to exploding or shattering and fails to operate as represented by Defendants.

171.    Affording Defendants a reasonable opportunity to cure their breach of warranties would be unnecessary and futile.  At the time of sale or lease of each Class Vehicle and all relevant times thereafter, Defendants knew of the material misrepresentations and omissions concerning the standard, quality or grade of the Class Vehicles and the existence of the defect in the Defective Sunroofs, but failed to repair or replace the Defective Sunroofs and/or disclose the defect in the Defective Sunroofs.  Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiff resort to an informal dispute resolution procedure and/or afford Defendants a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied.

172.    Plaintiff Ferguson and members of the Classes would suffer economic hardship if they returned their Class Vehicles, but did not receive the return of all payments made by them to Defendants.  Thus, Plaintiff Ferguson and members of the Classes have not re-accepted their Class Vehicles by retaining them.

173.    The amount in controversy of Plaintiff Ferguson's individual claims meets or exceeds the sum of $25.  The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

174.    Plaintiff Ferguson, individually and on behalf of the Classes, seek all damages permitted by law, including diminution in the value of the Class Vehicles, in an amount to be proven at trial.

**COUNT V**
**VIOLATIONS OF THE ALABAMA DECEPTIVE TRADE PRACTICES ACT**
**ALA. CODE §8-19-1, *ET SEQ.***
**(ON BEHALF OF THE ALABAMA SUB-CLASS)**

175.   Plaintiff Ferguson incorporates and realleges each preceding paragraph as though fully set forth herein.

176.   Plaintiff Ferguson brings this count on behalf of himself and the members of the Alabama Sub-Class.

177.   Plaintiff Ferguson and the members of the Alabama Sub-Class are "persons" within the meaning of Ala. Code § 8-19-3(5).

178.   The Class Vehicles are "goods" within the meaning of Ala. Code § 8-19-3(3).

179.   Defendants were and are engaged in "trade or commerce" within the meaning of Ala. Code § 8-19-3(8).

180.   The Alabama Deceptive Trade Practices Act ("Alabama DTPA") declares several specific actions to be unlawful, including, but not limited to: "(5) [r]epresenting that goods or services have…characteristics...uses, benefits, or qualities that they do not have"; "(7) [r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another"; "(24) [i]n selling a motor vehicle, failing to disclose material damage to the motor vehicle as prescribed hereafter…"; and "(27) [e]ngaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce." Ala. Code § 8-19-5.

181.   In the course of Defendants' businesses, Defendants failed to disclose and actively concealed the dangers, risks, and condition of the Class Vehicles, and otherwise engaged in activities with a tendency or capacity to deceive.  Accordingly, Defendants engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or

practices, including representing that the Class Vehicles have characteristics, uses, benefits and quality which they do not have; representing that they are of a particular standard and quality when they are not; failing to reveal a material fact, the omission of which tends to mislead or deceive the consumers, and which fact could not reasonably be known by the consumer; making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is; and/or failing to reveal facts that are material to the transaction in light of representations of fact made in a possible manner.

182. Defendants have known of the Defective Sunroofs in the Class Vehicles and failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and the Defective Sunroofs installed in them.

183. By failing to disclose and by actively concealing the Defective Sunroofs in the Class Vehicles, by marking the Class Vehicles as safe, reliable, and of high quality, and by presenting themselves as reputable manufacturers that value safety, Defendants engaged in unfair or deceptive business practices in violation of the Alabama DTPA. Defendants deliberately withheld the information about the propensity of the Defective Sunroofs to explode or shatter, in order to ensure that consumers would purchase the Class Vehicles.

184. In the course of Defendants' business, they willfully failed to disclose and actively concealed the dangerous risks posed by the many safety issues and serious defect discussed above. Defendants compounded the deception by repeatedly asserting that the Class Vehicles and/or the Defective Sunroofs installed in them were safe, reliable, and of high quality, and by claiming to be reputable manufacturers that value safety.

185.   Defendants' unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead, tended to create a false impression in consumers, were likely to and did in fact deceive reasonable consumers, including members of the Alabama Sub-Class, about the true safety and reliability of Class Vehicles and/or the Defective Sunroofs installed in them, the quality of Defendants' brands, and the true value of the Class Vehicles.

186.   Defendants intentionally and knowing misrepresented material facts regarding the Class Vehicles and/or the Defective Sunroofs installed in them with an intent to mislead the members of the Alabama Sub-Class.

187.   Defendants knew or should have known that their conduct violated the Alabama DTPA.

188.   As alleged above, Defendants made materials statements about the safety and reliability of the Class Vehicles and/or the Defective Sunroofs installed in them that were either false or misleading.

189.   To protect their profits and to avoid remediation costs and a public relations nightmare, Defendants concealed the dangers and risks posed by the Class Vehicles and/or the Defective Sunroofs installed in them and their tragic consequences, and allowed unsuspecting new and used car purchasers to continue to buy/lease the Class Vehicles, and allowed them to continue driving vehicles with a known safety hazard.

190.   Defendants owed the members of the Class a duty to disclose the true safety and reliability of the Class Vehicles and/or the Defective Sunroofs installed in them because Defendants:

(a)     Possessed exclusive and superior knowledge of the dangers and risks posed by the foregoing;

(b)     Intentionally concealed the foregoing from the Alabama Sub-Class; and/or

(c)     Made incomplete representations about the safety and reliability of the foregoing generally, while purposefully withholding material facts from the Alabama Sub-Class that contradicted these representations.

191.    Because Defendants concealed the existence of the Defective Sunroofs in Class Vehicles, and disclosure of this defect would cause a reasonable consumer to be deterred from purchasing the Class Vehicles, the value of the Class Vehicles has greatly diminished.  In light of the stigma attached to Class Vehicles by Defendants' conduct, they are now worth significantly less than they otherwise would be.

192.    Defendants' failure to disclose and active concealment of the dangers and risks posed by the defective airbag systems in Class Vehicles were material to the members of the Class.  A vehicle made by a reputable manufacturer of safe vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedies them.

193.    The members of the Class suffered ascertainable loss caused by Defendants' misrepresentations and their failure to disclose material information.  Had they been aware of the Defective Sunroofs that existed in the Class Vehicles, and Defendants' disregard for the associated safety, the members of the Class either would have paid less for their vehicles or would not have purchased or leased them at all.  The members of the Class had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose.

194.    Plaintiff Ferguson and the members of the Alabama Sub-Class did not receive the benefit of their bargains as a result of Defendants' misconduct.

195.    Defendants' violations present a continuing risk to the members of the Class, as well as to the general public.  Defendants' unlawful acts and practices complained of herein affect the public interest.

196.    The repairs instituted by Defendants, if any, have not been adequate.

197.    As a direct and proximate result of Defendants' violations of the Alabama DTPA, the members of the Class have suffered injury-in-fact and/or actual damage.

198.    Pursuant to Ala. Code § 8-19-10(a), Plaintiff Ferguson and the members of the Alabama Sub-Class seek monetary relief against Defendants measured as the greater of (a) actual damages in an amount to be determined at trial, and (b) $100 for each Class member, in addition to treble damages.

199.    Plaintiff Ferguson and the members of the Alabama Sub-Class also seek declaratory relief, punitive damages, an order enjoining Defendants' unfair, unlawful, and/or deceptive practices, and reasonable attorneys' fees and costs, as well as other proper and just relief under the Alabama DTPA.

200.    Defendants were provided notice of these violations of the Alabama DTPA on September 13, 2019 pursuant to Ala. Code § 8-19-10(e).  Defendants failed to remedy their unlawful conduct within the requisite time period and Plaintiff Ferguson and the members of the Alabama Sub-Class now seek all damages and relief to which they are entitled under the Alabama DTPA.

## COUNT VI
## FRAUD
## (ON BEHALF OF THE ARIZONA SUB-CLASS)

201.    Plaintiff Grewal incorporates and realleges each preceding paragraph as though fully set forth herein.

202.    Plaintiff Grewal brings this count on behalf of himself and the members of the Arizona Sub-Class.

203.    Defendants intentionally and knowingly falsely misrepresented, concealed, suppressed and/or omitted material facts including the standard, quality or grade of the Class Vehicles and the fact that the Defective Sunroofs installed in Class Vehicles are defective and prone to exploding or shattering, exposing drivers, occupants and members of the public to a safety risk. Defendants intended that Plaintiff Grewal and members of the Arizona Sub-Class rely on Defendants' misrepresentations and omissions.  As a direct result of Defendants' fraudulent conduct, members of the Arizona Sub-Class have suffered actual damages.

204.    Defendants owed a duty to disclose the Defective Sunroofs and their corresponding safety risk to Plaintiff Grewal and members of the Arizona Sub-Class because Defendants possessed superior and exclusive knowledge regarding the defect and the risk associated with the Defective Sunroofs.  Further, Defendants had a duty to disclose any information relating to the safety, quality, functionality and reliability of Class Vehicles because they consistently marketed the Class Vehicles as safe.  Once Defendants made representations to the public about safety, quality, functionality, and reliability, Defendants were under a duty to disclose these omitted facts, because where one does speak one must speak the whole truth and not conceal any facts which materially qualify those facts stated.  One who volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud.

205.    Rather than disclose the defect, Defendants intentionally and knowingly falsely misrepresented, concealed, suppressed and/or omitted material facts including the standard, quality or grade of the Class Vehicles and the fact that the Defective Sunroofs installed in the Class Vehicles are defective and expose drivers and occupants to exploding or shattering Defective Sunroofs in order to sell additional Class Vehicles and avoid the cost of repair or replacement of the Defective Sunroofs.

206.    As a result of Defendants' failure to disclose to members of the Classes the material fact that the Defective Sunroofs installed in Class Vehicles are defective and prone to exploding or shattering, owners and lessees of Class Vehicles are required to spend hundreds or thousands of dollars to repair or replace the Defective Sunroofs and/or other vehicle parts damaged during the exploding or shattering of the Defective Sunroofs, or sell their vehicles at a substantial loss.  The fact that the Defective Sunroofs installed in the Class Vehicles are defective and prone to exploding or shattering is material because no reasonable consumer expects that he or she will have to spend hundreds or thousands of dollars for diagnosis, repair or replacement the Defective Sunroofs and because Plaintiff Grewal and members of the Arizona Sub-Class had a reasonable expectation that the Class Vehicles would not suffer from exploding or shattering Defective Sunroofs that would present a safety risk.

207.    The fact that the Defective Sunroofs installed in the Class Vehicles are defective and prone to exploding or shattering is also material because the sunroofs present a safety risk and place drivers and occupants at risk of serious injury or death.  When the Defective Sunroofs explode or shatter, drivers and occupants may be sprayed with glass and injured.  Drivers and occupants of the Class Vehicles are also at risk for collisions caused by driver distraction as a

result of an exploding or shattering Defective Sunroof, and the general public is also at risk for being involved in an accident with a Class Vehicle.

208.   Plaintiff Grewal and members of the Arizona Sub-Class would not have purchased and/or leased the Class Vehicles but for Defendants' omissions and concealment of material facts regarding the nature and quality of the Class Vehicles and existence of the defect in the Defective Sunroofs, would have paid less for the Class Vehicles, or would have had the Defective Sunroofs replaced during the applicable warranty periods.

209.   Defendants knew their false misrepresentation, concealment and suppression of material facts was false and misleading and knew the effect of concealing those material facts. Defendants knew their concealment and suppression of the defect in the Defective Sunroofs would sell more Class Vehicles and would discourage Plaintiff Grewal and members of the Arizona Sub-Class from seeking replacement or repair of the Defective Sunroofs within the warranty periods.   Further, Defendants intended to induce Plaintiff Grewal and members of the Arizona Sub-Class into purchasing or leasing the Class Vehicles and discourage them from seeking replacement or repair of the Defective Sunroofs within the warranty periods, thereby unlawfully transferring the cost of repair or replacement from Defendants to Plaintiff Grewal and members of the Arizona Sub-Class, in order to decrease costs and increase profits.

210.   In connection with the purchase or lease of each of the Class Vehicles, Defendants provided warranty coverage for the Class Vehicles under one or more manufacturer's warranties.   For example, Defendants currently provide a New Vehicle Limited Warranty which includes coverage for defects in materials or workmanship to the first retail purchaser and each subsequent purchaser for 4 years or 50,000 miles, whichever occurs first.   Under the warranties provided to Plaintiff Grewal and members of the Arizona Sub-Class, Defendants promised to

repair or replace covered defective parts arising out of defects in materials and/or workmanship, including the Defective Sunroofs, at no cost to owners and lessees of the Class Vehicles.

211. Although Defendants informed Plaintiff Grewal and members of the Arizona Sub-Class that they would stand behind the quality and reliability of the Class Vehicles and repair or remedy any issues that arose during the warranty periods, Defendants knew (at the time of sale or lease and thereafter) that the Class Vehicles contained a defect in the Defective Sunroofs, concealed the defect, and never intended to repair or replace the Defective Sunroofs during the warranty periods. To date, Defendants have not provided Plaintiffs or members of the Classes with a repair or remedy for the Defective Sunroofs, and have not offered to replace the Defective Sunroofs in Class Vehicles.

212. Defendants acted with malice, oppression and fraud.

213. Plaintiff Grewal and members of the Arizona Sub-Class reasonably relied upon Defendants' knowing, affirmative and active false representations, concealment and omissions. As a direct and proximate result of Defendants' false representations, omissions and active concealment of material facts regarding the defect in the Defective Sunroofs, Plaintiff Grewal and members of the Arizona Sub-Class have suffered actual damages in an amount to be determined at trial.

**COUNT VII**
**NEGLIGENT MISREPRESENTATION**
**(ON BEHALF OF THE ARIZONA SUB-CLASS)**

214. Plaintiff Grewal incorporates and realleges each preceding paragraph as though fully set forth herein.

215. Plaintiff Grewal brings this count on behalf of himself and the members of the Arizona Sub-Class.

216.    Defendants owed a duty to disclose the defect in the Defective Sunroofs and its corresponding safety risk to Plaintiff Grewal and members of the Arizona Sub-Class because Defendants possessed superior and exclusive knowledge regarding the defect and the risks associated with the Defective Sunroofs exploding or shattering.  Further, Defendants had a duty to disclose any information relating to the safety, quality, functionality and reliability of Class Vehicles because they consistently marketed the Class Vehicles as safe.  Once Defendants made representations to the public about safety, quality, functionality, and reliability, Defendants was under a duty to disclose these omitted facts, because where one does speak one must speak the whole truth and not conceal any facts which materially qualify those facts stated.  One who volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud.

217.    Defendants negligently misrepresented and omitted material facts including the standard, quality or grade of the Class Vehicles and the fact that the Defective Sunroofs installed in the Class Vehicles are defective and prone to exploding or shattering, exposing drivers, occupants and members of the public to safety risks.  As a direct result of Defendants' negligent conduct, Plaintiff Grewal and members of the Arizona Sub-Class have suffered actual damages.

218.    As a result of Defendants' failure to disclose, in advertising, owners' manuals, maintenance schedules or elsewhere, to Plaintiff Grewal and members of the Arizona Sub-Class the material fact that the Defective Sunroofs installed in the Class Vehicles are defective and prone to exploding or shattering, owners and lessees of the Class Vehicles are required to spend hundreds or thousands of dollars to repair or replace the Defective Sunroofs and/or other vehicle parts damaged by the explosion, or sell their vehicles at a substantial loss.  The fact that the Defective Sunroofs installed in the Class Vehicles are prone to exploding or shattering is

material because no reasonable consumer expects that he or she will have to spend hundreds or thousands of dollars for diagnosis, repair or replacement of the Defective Sunroofs, and because Plaintiffs and members of the Classes had a reasonable expectation that the vehicles would not suffer from an exploding or shattering Defective Sunroof that would present a safety risk.

219.    The fact that the Defective Sunroofs installed in the Class Vehicles are prone to exploding or shattering is also material because the sunroofs present a safety risk and place drivers and occupants at risk of serious injury or death when they are showered with glass from an exploding Defective Sunroof, and when the driver of a Class Vehicle is distracted by such an explosion.

220.    Plaintiffs and members of the Classes would not have purchased the Class Vehicles but for Defendants' negligent false representations and omissions of material facts regarding the nature and quality of the Class Vehicles and existence of the defect in the Defective Sunroofs, would have paid less for the Class Vehicles, or would have had the Defective Sunroofs replaced during the applicable warranty periods.

221.    Plaintiffs and members of the Classes justifiably relied upon Defendants' negligent false representations and omissions of material facts.  As a direct and proximate result of Defendants' negligent false representations and omissions of material facts regarding the standard, quality or grade of the Class Vehicles and/or the defect in the Defective Sunroofs, Plaintiffs and members of the Classes have suffered an ascertainable loss and actual damages in an amount to be determined at trial.

222.    As a direct and proximate result of Defendants' negligent misrepresentations and/or omissions, Plaintiffs and members of the Classes have been damaged in an amount to be

proven at trial, including, but not limited to, compensatory damages, incidental and consequential damages, and other damages allowed by law.

**COUNT VIII**
**BREACH OF EXPRESS WARRANTY**
**ARIZ. REV. STAT. ANN. §§47-2313, 47-2A103, AND 47-2A210**
**(ON BEHALF OF ARIONZA SUB-CLAS)**

223.    Plaintiff Grewal incorporates and realleges each preceding paragraph as though fully set forth herein.

224.    Plaintiff Grewal brings this count on behalf of himself and the members of the Arizona Sub-Class.

225.    Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Ariz. Rev. Stat. Ann. §§47-2104(A) and 47-2a103(c), and "sellers" of motor vehicles under §47-2103(A)(4).

226.    With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under ARIZ. REV. STAT. ANN. §47-2A103(A)(16).

227.    The Class Vehicles are and were at all relevant times "goods" within the meaning of ARIZ. REV. STAT. ANN. §§47-2105(A) and 47-2a103(A)(8).

228.    In connection with the purchase or lease of each of the Class Vehicles, Defendants provide warranty coverage for the Class Vehicles under one or more manufacturer's warranties. For illustrative purposes, Defendants currently provide a New Vehicle Limited Warranty which includes coverage for defects in materials or workmanship to the first retail purchaser and each subsequent purchaser for 4 years or 50,000 miles, whichever occurs first. Under warranties provided to members of the Classes, Defendants promised to repair or replace covered defective parts arising out of defects in materials and/or workmanship, including the Defective Sunroofs, at no cost to owners and lessees of the Class Vehicles. However, on

information and belief, Defendants have concealed the defect in the Defective Sunroofs by, *inter alia*, blaming the damage on rocks or other foreign matter, and refusing to provide warranty coverage.

229.    Defendants' warranties formed a basis of the bargain that was reached when Plaintiff Grewal and members of the Arizona Sub-Class purchased or leased their Class Vehicles.

230.    The defect in the Defective Sunroofs existed in the Class Vehicles at the time of sale or lease and within the warranty periods but Plaintiff Grewal and members of the Arizona Sub-Class had no knowledge of the existence of the defect, which was known and concealed by Defendants.  Despite the applicable warranties, Defendants failed to inform Plaintiff Grewal and members of the Arizona Sub-Class that the Class Vehicles contained the defect in the Defective Sunroofs during the warranty periods in order to wrongfully transfer the costs of repair or replacement of the Defective Sunroofs to Plaintiff Grewal and members of the Arizona Sub-Class.

231.    Because of the defect in the Defective Sunroofs, Class Vehicles are not safe and reliable and owners and lessees of these vehicles have lost confidence in the ability of Class Vehicles to perform the function of safe reliable transportation.

232.    Plaintiff Grewal and members of the Arizona Sub-Class could not have reasonably discovered the defect in the Defective Sunroofs prior to the Defective Sunroofs exploding or shattering.

233.    Defendants breached the express warranty promising to repair and correct a manufacturing defect or defects in materials or workmanship of any parts they supplied.

234.    On information and belief, Defendants have not repaired or replaced the Defective Sunroofs free of charge for Plaintiff Grewal and members of the Arizona Sub-Class despite the defect in the Defective Sunroofs in the Class Vehicles at the time of sale or lease, or within the applicable warranty periods.

235.    Defendants further breached their express warranties by selling Class Vehicles that were defective with respect to materials, workmanship, and manufacture when Defendants knew the Defective Sunroofs were defective and had an associated safety risk.

236.    Class Vehicles were not of merchantable quality and were unfit for the ordinary purposes for which passenger vehicles are used because of materials, workmanship, and manufacture defects which cause exploding or shattering Defective Sunroofs which do not perform as warranted.

237.    Defendants were provided notice of the defect in the Defective Sunroofs by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA, and through their own testing.  Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here because Defendants have known of and concealed the Defective Sunroofs and, on information and belief, have refused to repair or replace the Defective Sunroofs for Class members free of charge within or outside of the warranty periods despite the defect's existence at the time of sale or lease of the Class Vehicles, and within the applicable warranty periods.

238.    Defendants were further provide notice of their breach of express warranties by Plaintiff Grewal when he presented his Class Vehicle for repair at Sandia BMW in Albuquerque, New Mexico on October 15, 2018.  Upon information and belief, Sandia BMW is an authorized dealer of Defendants and their duly authorized agent to perform warranty repairs.  Sandia BMW

refused to repair Plaintiff Grewal's Class Vehicle under warranty and instead charged him $2,669.46 to repair and/or replace the Defective Sunroof and associated car parts. Despite this notice, Defendants did not cure their breach of written warranties and failed to provide a suitable repair or replacement of the Defective Sunroof free of charge within a reasonable time.

239.    Any attempt by Defendants to disclaim or limit recovery to the terms of the express warranties is unconscionable and unenforceable here. Specifically, Defendants' warranty limitation is unenforceable because they knowingly sold or leased a defective product without informing consumers about the defect. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and members of the Classes. Among other things, Plaintiff Grewal and members of the Arizona Sub-Class did not determine these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and members of the Classes, and Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the Defective Sunroofs are prone to exploding or shattering.

240.    Further, the limited warranty promising to repair and/or correct a manufacturing defect fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff Grewal and members of the Arizona Sub-Class whole because, on information and belief, Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

241.    Defendants knew that the Class Vehicles were inherently defective and did not conform to their warranties and Plaintiff Grewal and members of the Arizona Sub-Class were induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

242.     Plaintiff Grewal and members of the Arizona Sub-Class have been excused from performance of any warranty obligations as a result of Defendants' conduct described herein.

243.     As a direct and proximate result of Defendants' breach of express warranties, Plaintiff Grewal and members of the Arizona Sub-Class have been damaged in an amount to be determined at trial.

244.     Finally, because of Defendants' breach of express warranty as set forth herein, Plaintiff Grewal and members of the Arizona Sub-Class assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to Plaintiff Grewal and members of the Arizona Sub-Class of the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

**COUNT IX**
**VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT ("MMWA"),**
**15 U.S.C. § 2301 *et seq.***
**(ON BEHALF OF THE NATIONWIDE CLASS OR, ALTERNATIVELY, ON BEHALF**
**OF THE ARIZONA SUB-CLASS)**

245.     Plaintiff Grewal incorporates and realleges each preceding paragraph as though fully set forth herein.

246.     Plaintiff Grewal brings this count on behalf of himself and the Nationwide Class or, alternatively, on behalf of the Arizona Sub-Class.

247.     Plaintiff satisfies the MMWA jurisdictional requirement because he alleges diversity jurisdiction under CAFA, 28 U.S.C. § 1332(d)(2).

248.     Plaintiff Grewal and members of the Classes are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

249.     Defendants are "supplier[s]" and "warrantor[s]" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

250.    The Class Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

251.    The MMWA provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.  *See* 15 U.S.C. § 2310(d)(1).

252.    Defendants provided Plaintiff Grewal and members of the Classes with one or more express warranties, which are covered under 15 U.S.C. § 2301(6).  In connection with the purchase or lease of each of the Class Vehicles, Defendants provide warranty coverage for the Class Vehicles under one or more manufacturer's warranties.  For illustrative purposes, Defendants currently provide a New Vehicle Limited Warranty which includes coverage for defects in materials or workmanship to the first retail purchaser and each subsequent purchaser for 4 years or 50,000 miles, whichever occurs first.  Under warranties provided to members of the Classes, Defendants promised to repair or replace covered defective parts arising out of defects in materials and/or workmanship, including the Defective Sunroofs, at no cost to owners and lessees of the Class Vehicles.  However, on information and belief, Defendants have concealed the defect in the Defective Sunroofs by, *inter alia*, blaming the damage on rocks or other foreign matter, and refusing to provide warranty coverage within or outside of the applicable warranty periods.

253.    Plaintiff Grewal and members of the Classes experienced the defect in the Defective Sunroofs within the warranty periods but Defendants failed to inform Plaintiff Grewal and members of the Classes of the existence of the Defective Sunroofs and associated safety risk, and failed to provide a suitable repair or replacement of the Defective Sunroofs free of charge within a reasonable time.

254.    Defendant BMW NA was provided notice by letter dated March 28, 2019 that Plaintiff Grewal would pursue a claim under the MMWA on behalf of a class.

255.    Any attempt by Defendants to disclaim or limit their express or implied warranties is unconscionable and unenforceable here.    Specifically, Defendants' warranty limitations are unenforceable because they knowingly sold or leased a defective product without informing consumers about the defect.    The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and members of the Classes.    Among other things, Plaintiff Grewal and members of the Classes did not determine these time limitations, the terms of which unreasonably favored Defendants.    A gross disparity in bargaining power existed between Defendants and members of the Classes, and Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease.

256.    The Class Vehicles' implied warranties are covered under 15 U.S.C. § 2301(7).

257.    Defendants breached these warranties by misrepresenting the standard, quality or grade of the Class Vehicles and failing to disclose and fraudulently concealing the existence of the defect in the Defective Sunroofs.    Without limitation, the Class Vehicles share a common defect in design, material, manufacturing and/or workmanship that is prone to exploding or shattering and fails to operate as represented by Defendants.

258.    Affording Defendants a reasonable opportunity to cure their breach of warranties would be unnecessary and futile.    At the time of sale or lease of each Class Vehicle and all relevant times thereafter, Defendants knew of the material misrepresentations and omissions concerning the standard, quality or grade of the Class Vehicles and the existence of the defect in the Defective Sunroofs, but failed to repair or replace the Defective Sunroofs and/or disclose the defect in the Defective Sunroofs.    Under the circumstances, the remedies available under any

informal settlement procedure would be inadequate and any requirement that Plaintiff resort to an informal dispute resolution procedure and/or afford Defendants a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied.

259.    Plaintiff Grewal and members of the Classes would suffer economic hardship if they returned their Class Vehicles, but did not receive the return of all payments made by them to Defendants.  Thus, Plaintiff Grewal and members of the Classes have not re-accepted their Class Vehicles by retaining them.

260.    The amount in controversy of Plaintiff Grewal's individual claims meets or exceeds the sum of $25.  The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

261.    Plaintiff Grewal, individually and on behalf of the Classes, seek all damages permitted by law, including diminution in the value of the Class Vehicles, in an amount to be proven at trial.

**COUNT X**
**VIOLATION OF THE ARIZONA CONSUMER FRAUD ACT**
**ARIZ. REV. STAT. § 44-1521, *et seq.***
**(ON BEHALF OF THE ARIZONA SUB-CLASS)**

262.    Plaintiff Grewal realleges and incorporates by reference all preceding allegations as though fully set forth herein.

263.    Plaintiff Grewal brings this claim on behalf of himself and the members of the Arizona Sub-Class.

264.    Defendants, Plaintiff Grewal, and the Arizona Sub-Class are "persons" within the meaning of Ariz. Rev. Stat. § 44-1521(6).

265.    The Class Vehicles are "merchandise" within the meaning of Ariz. Rev. Stat. § 44-1521(5).

266.    The statute provides that "[t]he act, use or employment by any persons of any deception, deceptive act or practice, fraud,… misrepresentation, or concealment, suppression or omission of any material fact with intent that other rely upon such concealment, suppression or omission, in connection with the sale … of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice."  Ariz. Rev. Stat. § 44-1522(A).

267.    In the course of Defendants' business, Defendants violated the Arizona CFA by failing to disclose and actively concealing the associated safety risk posed by Defective Sunroofs in the Class Vehicles, as described above.  Specifically, in marketing, offering for sale, and selling the Class Vehicles, Defendants engaged in in deceptive acts or practices, as outlined in Ariz. Rev. Stat. §44-1522(A), including using or employing deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression or omission of a material fact with intent that others rely upon such concealment, suppression or omission, in connection with the advertisement and sale of the Class Vehicles.

268.    Defendants have known of Defective Sunroofs in the Class Vehicles and failed to disclose and actively concealed the associated safety risk posed by the Class Vehicles.

269.    By failing to disclose and by actively concealing the Defective Sunroofs in the Class Vehicles, by marketing them as safe, reliable, and of high quality, and by presenting themselves as reputable manufacturers that value safety, Defendants engaged in unfair or deceptive business practices in violation of the Arizona CFA.  Defendants deliberately withheld

the information about the propensity of the Defective Sunroofs to explode and shatter, in order to ensure that consumers would purchase the Class Vehicles.

270.    In the course of Defendants' business, they willfully failed to disclose and actively concealed the associated safety risks posed by the defect discussed above.  Defendants compounded the deception by repeatedly asserting that the Class Vehicles were safe, reliable, and of high quality, and by claiming to be reputable manufacturers that value safety.

271.    Defendants' unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead, tended to create a false impression in consumers, were likely to and did in fact deceive reasonable consumers, including Plaintiff Grewal and the members of the Arizona Sub-Class, about the true safety and reliability of Class Vehicles, the quality of Defendants' brands, and the true value of the Class Vehicles.

272.    Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with an intent to mislead Plaintiff Grewal and the members of the Arizona Sub-Class.

273.    Defendants knew or should have known that their conduct violated the Arizona CFA.

274.    As alleged above, Defendants made material statements about the safety and reliability of the Class Vehicles that were either false or misleading.

275.    To protect their profits and to avoid remediation costs and damage to their reputations, Defendants concealed the safety risks posed by the Class Vehicles, and allowed unsuspecting new and used car purchasers to continue to buy/lease the Class Vehicles, and allowed them to continue driving dangerous vehicles.

276.    Defendants owed the members of the Class a duty to disclose the true safety and reliability of the Class Vehicles and/or the defective airbag systems installed in them because Defendants:

      (i)     Possessed exclusive and superior knowledge of the dangers and risks posed by the foregoing;

      (ii)    Intentionally concealed the foregoing from Plaintiff Grewal and the members of the Arizona Sub-Class; and/or

      (iii)   Made incomplete representations about the safety and reliability of the foregoing generally, while purposefully withholding material facts from Plaintiff Grewal and the members of the Arizona Sub-Class that contradicted these representations.

277.    Because Defendants fraudulently concealed the Defective Sunroofs in Class Vehicles, and disclosure of the existence of the Defective Sunroofs would cause a reasonable consumer to be deterred from purchasing the Class Vehicles, the value of the Class Vehicles has greatly diminished.  In light of the stigma attached to Class Vehicles by Defendants' conduct, they are now worth significantly less than they otherwise would be.

278.    Defendants' failure to disclose and active concealment of the dangers and risks posed by the Defective Sunroofs in Class Vehicles were material to Plaintiff Grewal and the members of the Arizona Sub-Class.  A vehicle made by a reputable manufacturer of safe vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedies them.

279.    Plaintiff Grewal and the members of the Arizona Sub-Class suffered ascertainable loss caused by Defendants' misrepresentations and their failure to disclose material information.

Had they been aware of the Defective Sunroofs that existed in the Class, and Defendants' disregard for safety, Plaintiff Grewal and the members of the Arizona Sub-Class either would have paid less for their vehicles or would not have purchased or leased them at all. Plaintiff Grewal and the members of the Arizona Sub-Class had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose.

280.    Plaintiff Grewal and the members of the Arizona Sub-Class did not receive the benefit of their bargain as a result of Defendants' misconduct.

281.    As a direct and proximate result of Defendants' violations of the Arizona CFA, Plaintiff Grewal and the members of the Arizona Sub-Class have suffered injury-in-fact and/or actual damage.

282.    Plaintiff Grewal and the members of the Arizona Sub-Class seek an order awarding damages and any other just and proper relief available under the Arizona CFA.

**COUNT XI**
**FRAUD**
**(ON BEHALF OF CALIFORNIA SUB-CLASS)**

283.    Plaintiffs Britt and Halem incorporate and reallege each preceding paragraph as though fully set forth herein.

284.    Plaintiffs Britt and Halem bring this count on behalf of themselves and the members of the California Sub-Class.

285.    Defendants intentionally and knowingly falsely misrepresented, concealed, suppressed and/or omitted material facts including the standard, quality or grade of the Class Vehicles and the fact that the Defective Sunroofs installed in Class Vehicles are defective and prone to exploding or shattering, exposing drivers, occupants and members of the public to a

74

safety risk. Defendants intended that Plaintiffs Britt, Halem, and members of the California Sub-Class rely on Defendants' misrepresentations and omissions. As a direct result of Defendants' fraudulent conduct, members of the Classes have suffered actual damages.

286. Defendants owed a duty to disclose the Defective Sunroofs and their corresponding safety risk to Plaintiffs Britt, Halem, and members of the California Sub-Class because Defendants possessed superior and exclusive knowledge regarding the defect and the risk associated with the Defective Sunroofs. Rather than disclose the defect, Defendants intentionally and knowingly falsely misrepresented, concealed, suppressed and/or omitted material facts including the standard, quality or grade of the Class Vehicles and the fact that the Defective Sunroofs installed in the Class Vehicles are defective and expose drivers and occupants to exploding or shattering Defective Sunroofs in order to sell additional Class Vehicles and avoid the cost of repair or replacement of the Defective Sunroofs.

287. As a result of Defendants' failure to disclose to members of the Classes the material fact that the Defective Sunroofs installed in Class Vehicles are defective and prone to exploding or shattering, owners and lessees of Class Vehicles are required to spend hundreds or thousands of dollars to repair or replace the Defective Sunroofs and/or other vehicle parts damaged during the exploding or shattering of the Defective Sunroofs, or sell their vehicles at a substantial loss. The fact that the Defective Sunroofs installed in the Class Vehicles are defective and prone to exploding or shattering is material because no reasonable consumer expects that he or she will have to spend hundreds or thousands of dollars for diagnosis, repair or replacement the Defective Sunroofs and because Plaintiffs Britt, Halem, and members of the California Sub-Class had a reasonable expectation that the Class Vehicles would not suffer from exploding or shattering Defective Sunroofs that would present a safety risk.

288.    The fact that the Defective Sunroofs installed in the Class Vehicles are defective and prone to exploding or shattering is also material because the sunroofs present a safety risk and place drivers and occupants at risk of serious injury or death.  When the Defective Sunroofs explode or shatter, drivers and occupants may be sprayed with glass and injured.  Drivers and occupants of the Class Vehicles are also at risk for collisions caused by driver distraction as a result of an exploding or shattering Defective Sunroof, and the general public is also at risk for being involved in an accident with a Class Vehicle.

289.    Plaintiffs Britt, Halem, and members of the California Sub-Class would not have purchased the Class Vehicles but for Defendants' omissions and concealment of material facts regarding the nature and quality of the Class Vehicles and existence of the defect in the Defective Sunroofs, would have paid less for the Class Vehicles, or would have had the Defective Sunroofs replaced during the applicable warranty periods.

290.    Defendants knew their false misrepresentation, concealment and suppression of material facts was false and misleading and knew the effect of concealing those material facts. Defendants knew their concealment and suppression of the defect in the Defective Sunroofs would sell more Class Vehicles and would discourage Plaintiffs Britt, Halem, and members of the California Sub-Class from seeking replacement or repair of the Defective Sunroofs within the warranty periods.  Further, Defendants intended to induce Plaintiffs Britt, Halem, and members of the California Sub-Class into purchasing or leasing the Class Vehicles and discourage them from seeking replacement or repair of the Defective Sunroofs within the warranty periods, thereby unlawfully transferring the cost of repair or replacement from Defendants to Plaintiffs Britt, Halem, and members of the California Sub-Class, in order to decrease costs and increase profits.

291.    In connection with the purchase or lease of each of the Class Vehicles, Defendants provided warranty coverage for the Class Vehicles under one or more manufacturer's warranties.  For example, Defendants currently provide a New Vehicle Limited Warranty which includes coverage for defects in materials or workmanship to the first retail purchaser and each subsequent purchaser for 4 years or 50,000 miles, whichever occurs first.  Under the warranties provided to Plaintiffs Britt, Halem, and members of the California Sub-Class, Defendants promised to repair or replace covered defective parts arising out of defects in materials and/or workmanship, including the Defective Sunroofs, at no cost to owners and lessees of the Class Vehicles.

292.    Although Defendants informed Plaintiffs Britt, Halem, and members of the California Sub-Class that they would stand behind the quality and reliability of the Class Vehicles and repair or remedy any issues that arose during the warranty periods, Defendants knew (at the time of sale or lease and thereafter) that the Class Vehicles contained a defect in the Defective Sunroofs, concealed the defect, and never intended to repair or replace the Defective Sunroofs during the warranty periods.  To date, Defendants have not provided Plaintiffs Britt, Halem, and members of the California Sub-Class with a repair or remedy for the Defective Sunroofs, and have not offered to replace the Defective Sunroofs in Class Vehicles.

293.    Defendants acted with malice, oppression and fraud.

294.    Plaintiffs Britt, Halem, and members of the California Sub-Class reasonably relied upon Defendants' knowing, affirmative and active false representations, concealment and omissions.  As a direct and proximate result of Defendants' false representations, omissions and active concealment of material facts regarding the defect in the Defective Sunroofs, Plaintiffs

Britt, Halem, and members of the California Sub-Class have suffered actual damages in an amount to be determined at trial.

**COUNT XII**
**BREACH OF EXPRESS WARRANTY**
**CAL. COM. CODE §§ 2313, 10103, AND 10210**
**(ON BEHALF OF THE CALIFORNIA SUB-CLASS)**

295.    Plaintiffs Britt and Halem incorporate and reallege each preceding paragraph as though fully set forth herein.

296.    Plaintiffs Britt and Halem bring this count on behalf of themselves and the members of the California Sub-Class.

297.    Defendants marketed the Class Vehicles as safe, built to last, and reliable vehicles. Such representations formed the basis of the bargain in Plaintiffs Britt and Halem's and the California Sub-Class' decisions to purchase or lease the Class Vehicles.

298.    Defendants are and were at all relevant times "merchants" with respect to of motor vehicles under Cal. Com. Code §§2104(1) and 10103(c), and "sellers" of motor vehicles under § 2103(1)(d).

299.    With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Cal. Com. Code §10103(a)(16).

300.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Cal. Com. Code §§2105(1) and 10103(a)(8).

301.    In connection with the purchase or lease of each of the Class Vehicles, Defendants provide warranty coverage for the Class Vehicles under one or more manufacturer's warranties.  For illustrative purposes, Defendants currently provide a New Vehicle Limited Warranty which includes coverage for defects in materials or workmanship to the first retail purchaser and each subsequent purchaser for 4 years or 50,000 miles, whichever occurs first.

78

Under warranties provided to members of the Classes, Defendants promised to repair or replace covered defective parts arising out of defects in materials and/or workmanship, including the Defective Sunroofs, at no cost to owners and lessees of the Class Vehicles. However, on information and belief, Defendants have concealed the defect in the Defective Sunroofs by, *inter alia*, blaming the damage on rocks or other foreign matter, and refusing to provide warranty coverage.

302.    Defendants' warranties formed a basis of the bargain that was reached when Plaintiffs Britt, Halem, and members of the California Sub-Class purchased or leased their Class Vehicles.

303.    The defect in the Defective Sunroofs existed in the Class Vehicles at the time of sale or lease and within the warranty periods but Plaintiffs Britt, Halem, and members of the California Sub-Class had no knowledge of the existence of the defect, which was known and concealed by Defendants. Despite the applicable warranties, Defendants failed to inform Plaintiffs Britt, Halem, and members of the California Sub-Class that the Class Vehicles contained the defect in the Defective Sunroofs during the warranty periods in order to wrongfully transfer the costs of repair or replacement of the Defective Sunroofs to Plaintiffs Britt, Halem, and members of the California Sub-Class.

304.    Because of the defect in the Defective Sunroofs, Class Vehicles are not safe and reliable and owners and lessees of these vehicles have lost confidence in the ability of Class Vehicles to perform the function of safe reliable transportation.

305.    Plaintiffs Britt, Halem, and members of the California Sub-Class could not have reasonably discovered the defect in the Defective Sunroofs prior to the Defective Sunroofs exploding or shattering.

306.    Defendants breached the express warranty promising to repair and correct a manufacturing defect or defects in materials or workmanship of any parts they supplied.

307.    On information and belief, Defendants have not repaired or replaced the Defective Sunroofs free of charge for Plaintiffs Britt, Halem, and members of the California Sub-Class despite the defect in the Defective Sunroofs in the Class Vehicles at the time of sale or lease, or within the applicable warranty periods.

308.    Defendants further breached their express warranties by selling Class Vehicles that were defective with respect to materials, workmanship, and manufacture when Defendants knew the Defective Sunroofs were defective and had an associated safety risk.

309.    Class Vehicles were not of merchantable quality and were unfit for the ordinary purposes for which passenger vehicles are used because of materials, workmanship, and manufacture defects which cause exploding or shattering Defective Sunroofs which do not perform as warranted.

310.    Defendants were provided notice of the defect in the Defective Sunroofs by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA, and through their own testing.  Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here because Defendants have known of and concealed the Defective Sunroofs and, on information and belief, have refused to repair or replace the Defective Sunroofs for Class members free of charge within or outside of the warranty periods despite the defect's existence at the time of sale or lease of the Class Vehicles, and within the applicable warranty periods.

311.    Defendants were further provided notice of their breach of express warranties by Plaintiff Britt when she presented her Class Vehicle for repair at Creiver BMW of Santa Ana,

California in June 2018.  Upon information and belief, Creiver BMW is an authorized dealer of Defendants and their duly authorized agent to perform warranty repairs.  Upon diagnosing the shattered sunroof in her Class Vehicle, Creiver BMW quoted Plaintiff Britt $4,887 to replace the sunroof instead of submitting this as a warranty repair to Defendants.  Despite this notice, Defendants did not cure their breach of written warranties and failed to provide a suitable repair or replacement of the Defective Sunroof free of charge within a reasonable time.

312.    Defendants were further provided notice of their breach of express warranties by Plaintiff Halem when he called Bob Smith BMW of Calabasas, California on September 26, 2019 and asked that his sunroof be repaired under warranty.  Upon information and belief, Bob Smith BMW is an authorized dealer of Defendants and their duly authorized agent to perform warranty repairs.  Despite this notice, Defendants did not cure their breach of written warranties and failed to provide a suitable repair or replacement of the Defective Sunroof free of charge within a reasonable time.

313.    Any attempt by Defendants to disclaim or limit recovery to the terms of the express warranties is unconscionable and unenforceable here.  Specifically, Defendants' warranty limitation is unenforceable because they knowingly sold or leased a defective product without informing consumers about the defect.  The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs Britt, Halem, and members of the California Sub-Class.  Among other things, Plaintiffs Britt, Halem, and members of the California Sub-Class did not determine these time limitations, the terms of which unreasonably favored Defendants.  A gross disparity in bargaining power existed between Defendants and members of the Classes, and Defendants knew or should have known that the

Class Vehicles were defective at the time of sale or lease and that the Defective Sunroofs are prone to exploding or shattering.

314.    Further, the limited warranty promising to repair and/or correct a manufacturing defect fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs Britt, Halem, and members of the California Sub-Class whole because, on information and belief, Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

315.    Defendants knew that the Class Vehicles were inherently defective and did not conform to their warranties and Plaintiffs Britt, Halem, and members of the California Sub-Class were induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

316.    Plaintiffs Britt, Halem, and members of the California Sub-Class have been excused from performance of any warranty obligations as a result of Defendants' conduct described herein.

317.    As a direct and proximate result of Defendants' breach of express warranties, Plaintiffs Britt, Halem, and members of the California Sub-Class have been damaged in an amount to be determined at trial.

318.    Finally, because of Defendants' breach of express warranty as set forth herein, Plaintiffs Britt, Halem, and members of the California Sub-Class assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to Plaintiffs Britt, Halem, and members of the California Sub-Class of the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

## COUNT XIII
## BREACH OF IMPLIED WARRANTY
## CAL. COM. CODE §§ 2314, 10103, AND 10212
## (ON BEHALF OF THE CALIFORNIA SUB-CLASS)

319.   Plaintiffs Britt and Halem incorporate and reallege each preceding paragraph as though fully set forth herein.

320.   Plaintiffs Britt and Halem bring this count on behalf of themselves and on behalf of the California Sub-Class.

321.   Plaintiffs Britt, Halem, and members of the California Sub-Class purchased or leased the Class Vehicles from Defendants by and through Defendants' authorized agents for retail sales, or were otherwise expected to be the eventual purchasers of the Class Vehicles when bought from a third party.  At all relevant times, Defendants were the manufacturers, distributors, warrantors, and/or sellers of Class Vehicles.  Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased.

322.   Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Cal. Com. Code §§2104(1) and 10103(c), and "sellers" of motor vehicles under §2103(1)(d).

323.   With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Cal. Com. Code §10103(a)(16).

324.   The Class Vehicles are and were at all relevant times goods within the meaning of Cal. Com. Code §§2105(1) and 10103(a)(8).

325.   A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to Cal. Com. Code §§2314 and 10212.

326.    Defendants impliedly warranted that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used.

327.    The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose of providing safe and reliable transportation.  The Class Vehicles contain an inherent defect in the Defective Sunroofs (at the time of sale or lease and thereafter) and present an undisclosed safety risk to drivers and occupants.  Thus, Defendants breached their implied warranty of merchantability.

328.    Defendants cannot disclaim their implied warranties as they knowingly sold or leased a defective product.

329.    Defendants were provided notice of the defect in the Defective Sunroofs by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA, and through their own testing.  Affording Defendants a reasonable opportunity to cure their breach of implied warranties would be unnecessary and futile here because Defendants have known of and concealed the defect in the Defective Sunroofs and, on information and belief, have refused to repair or replace the Defective Sunroofs free of charge within or outside of the warranty periods despite the defect's existence at the time of sale or lease of the Class Vehicles.

330.    Defendants were further provided notice of their breach of implied warranties by Plaintiff Britt when she presented her Class Vehicle for repair at Creiver BMW, in Santa Ana, California in June 2018.  Upon information and belief, Creiver BMW is an authorized dealer of Defendants and their duly authorized agent to perform warranty repairs.  Upon diagnosing the shattered sunroof in her Class Vehicle, Creiver BMW attempted to charge her $4,887 to replace and/or repair the Defective Sunroof and associated car parts instead of submitting this a warranty

repair to BMW.  Despite this notice, Defendants did not cure its breach of implied warranties and failed to provide a suitable repair or replacement of the Defective Sunroof free of charge within a reasonable time.

331.    Defendants were further provided notice of their breach of implied warranties by Plaintiff Halem when he called Bob Smith BMW of Calabasas, California on September 26, 2019 and asked that his sunroof be repaired under warranty.  Upon information and belief, Bob Smith BMW is an authorized dealer of Defendants and their duly authorized agent to perform warranty repairs.  Despite this notice, Defendants did not cure their breach of implied warranties and failed to provide a suitable repair or replacement of the Defective Sunroof free of charge within a reasonable time.

332.    As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs Britt, Halem, and members of the California Sub-Class have been damaged in an amount to be proven at trial.

333.    Any attempt by Defendants to disclaim or limit the implied warranty of merchantability vis-à-vis consumers is unconscionable and unenforceable here.  Specifically, Defendants' warranty limitation is unenforceable because they knowingly sold or leased a defective product without informing consumers about the defect.  The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and members of the Classes.  Among other things, Plaintiffs Britt, Halem, and members of the California Sub-Class did not determine these time limitations, the terms of which unreasonably favored Defendants.  A gross disparity in bargaining power existed between Defendants and members of the Classes, and Defendants knew or should have known that the Class Vehicles

were defective at the time of sale or lease and that the Defective Sunroofs were defective and posed a safety risk during the applicable warranty periods.

334.    Further, as manufacturers of consumer goods, Defendants are precluded from excluding or modifying an implied warranty of merchantability or limiting consumer remedies for breach of this warranty.

335.    Plaintiffs Britt, Halem, and members of the California Sub-Class have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Defendants' conduct described herein.

336.    The Class Vehicles are not safe and reliable and owners and lessees of these vehicles have lost confidence in the ability of Class Vehicles to perform the function of safe reliable transportation without the likelihood of unanticipated sudden exploding or shattering of the Defective Sunroofs.   Defendants are estopped by their conduct, as alleged herein, from disclaiming any and all implied warranties with respect to the Defective Sunroofs in Class Vehicles.

337.    The applicable statute of limitations for the implied warranty claim has been tolled by the discovery rule, fraudulent concealment and the terms of the express warranty.

**COUNT XIV**
**VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT ("MMWA"),**
**15 U.S.C. § 2301 *et seq.***
**(ON BEHALF OF THE NATIONWIDE CLASS OR, ALTERNATIVELY, ON BEHALF**
**OF THE CALIFORNIA SUB-CLASS)**

338.    Plaintiffs Britt and Halem incorporate and reallege each preceding paragraph as though fully set forth herein.

339.    Plaintiffs Britt and Halem bring this count on behalf of themselves and the Nationwide Class or, alternatively, on behalf of the California Sub-Class.

340.    Plaintiffs Britt and Halem satisfy the MMWA jurisdictional requirement because they alleges diversity jurisdiction under CAFA, 28 U.S.C. § 1332(d)(2).

341.    Plaintiffs Britt, Halem, and members of the Classes are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

342.    Defendants are "supplier[s]" and "warrantor[s]" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

343.    The Class Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

344.    The MMWA provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty. *See* 15 U.S.C. § 2310(d)(1).

345.    Defendants provided Plaintiffs Britt, Halem, and members of the Classes with one or more express warranties, which are covered under 15 U.S.C. § 2301(6).  In connection with the purchase or lease of each of the Class Vehicles, Defendants provide warranty coverage for the Class Vehicles under one or more manufacturer's warranties.  For illustrative purposes, Defendants currently provide a New Vehicle Limited Warranty which includes coverage for defects in materials or workmanship to the first retail purchaser and each subsequent purchaser for 4 years or 50,000 miles, whichever occurs first.  Under warranties provided to members of the Classes, Defendants promised to repair or replace covered defective parts arising out of defects in materials and/or workmanship, including the Defective Sunroofs, at no cost to owners and lessees of the Class Vehicles.  However, on information and belief, Defendants have concealed the defect in the Defective Sunroofs by, *inter alia*, blaming the damage on rocks or other foreign matter, and refusing to provide warranty coverage within or outside of the applicable warranty periods.

346.    Plaintiffs Britt, Halem, and members of the Classes experienced the defect in the Defective Sunroofs within the warranty periods but Defendants failed to inform Plaintiffs and members of the Classes of the existence of the Defective Sunroofs and associated safety risk, and failed to provide a suitable repair or replacement of the Defective Sunroofs free of charge within a reasonable time.

347.    Defendant BMW NA was provided notice by letter dated March 28, 2019 that Plaintiff Britt would pursue a claim under the MMWA on behalf of a class.

348.    Any attempt by Defendants to disclaim or limit their express or implied warranties is unconscionable and unenforceable here.    Specifically, Defendants' warranty limitations are unenforceable because they knowingly sold or leased a defective product without informing consumers about the defect.    The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs Britt, Halem, and members of the Classes.    Among other things, Plaintiffs Britt, Halem, and members of the Classes did not determine these time limitations, the terms of which unreasonably favored Defendants.    A gross disparity in bargaining power existed between Defendants and members of the Classes, and Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease.

349.    The Class Vehicles' implied warranties are covered under 15 U.S.C. § 2301(7).

350.    Defendants breached these warranties by misrepresenting the standard, quality or grade of the Class Vehicles and failing to disclose and fraudulently concealing the existence of the defect in the Defective Sunroofs.    Without limitation, the Class Vehicles share a common defect in design, material, manufacturing and/or workmanship that is prone to exploding or shattering and fails to operate as represented by Defendants.

351.    Affording Defendants a reasonable opportunity to cure their breach of warranties would be unnecessary and futile.  At the time of sale or lease of each Class Vehicle and all relevant times thereafter, Defendants knew of the material misrepresentations and omissions concerning the standard, quality or grade of the Class Vehicles and the existence of the defect in the Defective Sunroofs, but failed to repair or replace the Defective Sunroofs and/or disclose the defect in the Defective Sunroofs.  Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiff resort to an informal dispute resolution procedure and/or afford Defendants a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied.

352.    Plaintiffs Britt, Halem, and members of the Classes would suffer economic hardship if they returned their Class Vehicles, but did not receive the return of all payments made by them to Defendants.  Thus, Plaintiffs Britt, Halem, and members of the Classes have not re-accepted their Class Vehicles by retaining them.

353.    The amount in controversy of Plaintiff Britt's individual claims meets or exceeds the sum of $25. The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

354.    Plaintiff Britt, individually and on behalf of the Classes, seek all damages permitted by law, including diminution in the value of the Class Vehicles, in an amount to be proven at trial.

## COUNT XV
## VIOLATION OF THE CONSUMERS LEGAL REMEDIES ACT,
### CAL. CIV. CODE § 1750 *et seq.*
### (ON BEHALF OF THE CALIFORNIA SUB-CLASS)

355.    Plaintiffs Britt and Halem incorporate and reallege each preceding paragraph as though fully set forth herein.

356.    Plaintiffs Britt and Halem bring this count on behalf of themselves and the members of the California Sub-Class.

357.    The Consumer Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.* ("CLRA") "protect[s] consumers against unfair and deceptive business practices." *See* Cal. Civ. Code § 1760.

358.    Plaintiffs Britt, Halem, and members of the California Sub-Class are consumers within the meaning of Cal. Civ. Code § 1761(d).

359.    Plaintiffs Britt, Halem, and members of the California Sub-Class purchased their Class Vehicles primarily for personal, family, or household purposes.

360.    The Class Vehicles are goods within the meaning of Cal. Civ. Code § 1761(a).

361.    Defendants violated and continue to violate the CLRA by engaging in unfair and deceptive trade practices, including, *inter alia*: (1) representing that Class Vehicles have characteristics which they do not; (2) representing that the Class Vehicles are of a particular standard when they are of another; and (3) advertising the Class Vehicles with the intent not to sell them as advertised.  *See* Cal. Civ. Code § 1170.

362.    Defendants further violated the CLRA by failing to disclose within the warranty period, or any time thereafter, the material fact that the Class Vehicles incorporate Defective Sunroofs that are defective and expose drivers and their passengers to the safety risk of sudden explosion and/or shattering of the sunroofs.

363.    Defendants also violated the CLRA by actively concealing the material fact that the Class Vehicles incorporate Defective Sunroofs that are defective and expose drivers and their passengers to the safety risk of sudden explosion and/or shattering of the sunroofs for the

purpose of selling additional Class Vehicles and/or transferring the cost of repair or replacement of the Defective Sunroofs to Plaintiff Britt and California Sub-Class members.

364.    The fact that the Defective Sunroofs installed in the Class Vehicles are defective and expose drivers and their passengers to the risk of sudden exploding and/or shattering of the sunroofs is material because Plaintiffs Britt, Halem, and members of the California Sub-Class had a reasonable expectation that the vehicles would not suffer from Defective Sunroofs that would expose them and other vehicle occupants to the risk of sudden exploding and/or shattering of the sunroofs, and an associated safety risk.  No reasonable consumer expects a vehicle to incorporate a Defective Sunroof that exposes drivers and other occupants to the risk of sudden exploding and/or shattering of the sunroof.

365.    Defendants have knowingly and willfully engaged in the unfair and deceptive trade practices alleged herein.  Further, Defendants unconscionably marketed the Class Vehicles to uninformed consumers in order to maximize profits by selling additional Class Vehicles containing the undisclosed defect and corresponding safety risk.

366.    Defendants' unlawful acts and practices affect the public interest, and trade and commerce in the State of California, and present a continuing safety risk to Plaintiffs Britt, Halem, and members of the California Sub-Class.

367.    As a direct and proximate result of Defendants' violations of the CLRA, Plaintiffs Britt, Halem, and members of the California Sub-Class have suffered actual damages and/or injury in fact, including, *inter alia*: (1) out-of-pocket monies for diagnosis, repair and/or replacement of the Defective Sunroofs; (2) the difference in value between the Class Vehicles promised and warranted, and the Class Vehicles containing the Defective Sunroofs; (3) time lost associated with the repair or replacement of the Defective Sunroofs and/or expenses related to

obtaining alternative transportation during the repair or replacement of the Defective Sunroofs; (4) future repair or replacement of the Defective Sunroofs; and/or (5) the diminished resale value of the Class Vehicles containing the Defective Sunroofs.

368. With this filing, and on this Count, Plaintiffs Britt, Halem, and members of the California Sub-Class seek an order enjoining Defendants' unfair and deceptive practices.

369. Defendants' violations of the CLRA were willful and oppressive.

370. Plaintiffs have provided Defendants with notice of their violations of the CLRA pursuant to Cal. Civ. Code § 1782(a). The notice was transmitted to Defendants on March 28, 2019 and October 31, 2019. More than thirty days have passed since notice was transmitted to Defendants and, to date, Defendants have failed to remedy their violations of the CLRA. Therefore, Plaintiffs Britt, Halem, and members of the California Sub-Class seek monetary relief for Defendants' violations of the CLRA.

### COUNT XVI
### VIOLATION OF THE UNFAIR COMPETITION LAW,
### CAL. BUS. & PROF. CODE § 17200 *et seq.*
### (ON BEHALF OF THE CALIFORNIA SUB-CLASS)

371. Plaintiffs Britt and Halem incorporate and reallege each preceding paragraph as though fully set forth herein.

372. Plaintiffs Britt and Halem bring this count on behalf of themselves and the members of the California Sub-Class.

373. Cal. Bus. & Prof. Code § 17200 et seq. (the "UCL") prohibits "any unlawful, unfair or fraudulent business act or practice."

374. As alleged herein, Defendants have violated the UCL by engaging in unlawful, unfair and fraudulent business acts or practices.

375.     In violation of the UCL, Defendants employed unfair, unlawful and deceptive acts or practices, fraud, false pretense, misrepresentations, or concealment, suppression or omission of a material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale and/or lease of Class Vehicles.   Defendants knowingly concealed, suppressed and/or omitted material facts regarding the Defective Sunroofs and associated safety risk and misrepresented the standard, quality or grade of the Class Vehicles, which directly caused harm to Plaintiffs Britt, Halem, and members of the Classes.

376.     Defendants actively suppressed the fact that the Defective Sunroofs in Class Vehicles are defective and present a safety risk because of materials, workmanship, design and/or manufacturing defects.   Further, Defendants employed unfair, unlawful and fraudulent business practices to deny repair or replacement of Defective Sunroofs and failed to repair or replace the Defective Sunroofs free of charge within a reasonable time in violation of the UCL.

377.     Defendants breached their warranties, the CLRA, the Song-Berly Consumer Warranty Act and the Magnuson-Moss Warranty Act as alleged herein in violation of the UCL.

378.     Defendants' unfair, unlawful and fraudulent business practices were likely to deceive a reasonable consumer.   Plaintiffs Britt, Halem, and members of the California Sub-Class had no reasonable way to know that Class Vehicles contained Defective Sunroofs, which were defective in materials, workmanship, design and/or manufacture and posed a safety risk. Defendants possessed superior knowledge as to the quality and characteristics of the Class Vehicles, including the Defective Sunroofs and associated safety risk, and any reasonable consumer would have relied on Defendants' misrepresentations and omissions as Plaintiffs Britt, Halem, and members of the California Sub-Class did.

93

379.    Defendants intentionally and knowingly misrepresented and omitted facts regarding the Defective Sunroofs and associated safety risk with the intent to mislead Plaintiffs Britt, Halem, and members of the California Sub-Class.  Defendants knew, or should have known, that the Defective Sunroofs are defective and expose drivers and occupants of the Class Vehicles to the risk of an exploding or shattering sunroof that may shower the driver and occupants with shards of glass.

380.    Defendants owed a duty to disclose the Defective Sunroofs and corresponding safety risk to Plaintiffs Britt, Halem, and members of the California Sub-Class because Defendants possessed superior and exclusive knowledge regarding the defect and the risk associated with the Defective Sunroofs.  Rather than disclose the defect, Defendants engaged in unfair, unlawful and fraudulent business practices in order to sell additional Class Vehicles and avoid the cost of repair or replacement of the Defective Sunroofs.

381.    Defendants' unfair, unlawful and fraudulent acts or practices, affirmative misrepresentations and/or material omissions regarding the Defective Sunroofs were intended to mislead consumers and misled Plaintiffs Britt, Halem, and members of the California Sub-Class.

382.    At all relevant times, Defendants' unfair and deceptive acts or practices, affirmative misrepresentations and/or omissions regarding the Defective Sunroofs and corresponding safety risk were material to Plaintiffs Britt, Halem, and members of the California Sub-Class.  When Plaintiffs Britt, Halem, and members of the California Sub-Class purchased or leased their Class Vehicles, they reasonably relied on the reasonable expectation that the Class Vehicles would be free from defects and would not contain a Defective Sunroof prone to exploding or shattering.  Had Defendants disclosed that the Defective Sunroofs were prone to exploding or shattering and/or pose an unavoidable safety risk, Plaintiffs Britt, Halem, and

members of the California Sub-Class would not have purchased or leased the Class Vehicles, would have paid less for their vehicles, or would have had the Defective Sunroofs repaired free of charge within the applicable warranty periods.

383.    Defendants had a continuous duty to Plaintiffs Britt, Halem, and members of the California Sub-Class to refrain from unfair, unlawful and fraudulent practices under the UCL and to disclose the defect and associated safety risks.  Defendants' unfair, unlawful and fraudulent acts or practices, affirmative misrepresentations and/or material omissions regarding the Defective Sunroofs and corresponding safety risk are substantially injurious to consumers.  As a result of Defendants' knowing, intentional concealment and/or omission of the Defective Sunroofs and associated safety risk in violation of the UCL, Plaintiffs Britt, Halem, and members of the California Sub-Class have suffered harm and/or continue to suffer harm by the threat of being exposed to an exploding or shattering Defective Sunroof and/or an unavoidable safety risk, and damages to be determined at trial.  Owners and lessees of Class Vehicles also suffered an ascertainable loss in the form of, *inter alia*, out-of-pocket costs for diagnosis and repair or replacement of the Defective Sunroofs, and the diminished value of their vehicles as a result of Defendants' unfair, unlawful and fraudulent acts and practices in the course of its business.

384.    Defendants have knowingly and willfully engaged in the unfair, unlawful and fraudulent business practices alleged herein.  Further, Defendants unconscionably marketed the Class Vehicles to uninformed consumers in order to maximize profits by selling additional Class Vehicles containing the undisclosed defect and corresponding safety risk.

385.    Defendants' unfair, unlawful and fraudulent acts and practices have harmed and continue to harm Plaintiff and members of the California Sub-Class, have negatively affected the

public interest, and present a continuing safety risk to Plaintiffs Britt, Halem, and members of the California Sub-Class.

386.    Plaintiffs Britt, Halem, and members of the California Sub-Class seek an order enjoining Defendants' unfair, unlawful, and fraudulent practices and awarding costs, attorneys' fees and restitution, disgorgement of funds, and any other just and proper relief available under the UCL and California law.

**COUNT XVII**
**VIOLATION OF THE SONG-BEVERLY CONSUMER WARRANTY ACT,**
**CAL. CIV. CODE § 1791 *et seq.***
**(ON BEHALF OF THE SONG-BEVERLY SUB-CLASS)**

387.    Plaintiffs Britt and Halem incorporate and reallege each preceding paragraph as though fully set forth herein.

388.    Plaintiffs Britt and Halem bring this count on behalf of themselves and members of the Song-Beverly Sub-Class.

389.    Plaintiffs Britt, Halem and members of the Song-Beverly Sub-Class purchased or leased the Class Vehicles from Defendants by and through Defendants' authorized agents for retail sales, or were otherwise expected to be the eventual purchasers of the Class Vehicles when bought from a third party.

390.    At all relevant times, Defendants were the manufacturer, distributor, warrantor, and/or seller of Class Vehicles.  Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased.

391.    Defendants provided Plaintiffs Britt, Halem, and members of the Song-Beverly Sub-Class with one or more express warranties, which are covered under 15 U.S.C. § 2301(6). For illustrative purposes, Defendants currently provide a New Vehicle Limited Warranty which includes coverage for defects in materials or workmanship to the first retail purchaser and each

subsequent purchaser for 4 years or 50,000 miles, whichever occurs first.  Under warranties provided to members of the Song-Beverly Sub-Class, Defendants promised to repair or replace covered defective parts arising out of defects in materials and/or workmanship, including the Defective Sunroofs, at no cost to owners and lessees of the Class Vehicles.  As alleged herein, Defendants breached these warranties.  On information and belief, Defendants have concealed the defect in the Defective Sunroofs by, *inter alia*, blaming the damage on rocks or other foreign matter, and refusing to provide warranty coverage.

392.    Plaintiffs Britt, Halem, and members of the Song-Beverly Sub-Class experienced the defect in the Defective Sunroofs within the warranty periods but Defendants failed to inform Plaintiffs Britt, Halem, and members of the Song-Beverly Sub-Class of the existence of the Defective Sunroofs and associated safety risk, and failed to provide a suitable repair or replacement of the Defective Sunroofs free of charge within a reasonable time.

393.    Defendants impliedly warranted that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used, including for safe and reliable transportation.  The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and were and are not fit for the ordinary purpose of providing safe and reliable transportation.  The Class Vehicles contain an inherent defect in the Defective Sunroofs (at the time of sale or lease and thereafter) and present an undisclosed safety risk to drivers and occupants.  Thus, Defendants breached their implied warranties of merchantability and fitness.

394.    Any attempt by Defendants to disclaim or limit their express or implied warranties is unconscionable and unenforceable here.  Specifically, Defendants' warranty limitations are unenforceable because they knowingly sold or leased a defective product without

informing consumers about the defect.  The time limits contained in Defendants' warranty periods are also unconscionable and inadequate to protect Plaintiffs Britt, Halem, and members of the Song-Beverly Sub-Class.  Among other things, Plaintiffs Britt, Halem, and members of the Song-Beverly Sub-Class did not determine these time limitations, the terms of which unreasonably favored Defendants.  A gross disparity in bargaining power existed between Defendants and members of the Song-Beverly Sub-Class, and Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that they posed a safety risk.

395.    Defendants were provided notice of the defect in the Defective Sunroofs by numerous consumer complaints made to its authorized dealers nationwide, complaints to NHTSA, and through their own testing.  Affording Defendants a reasonable opportunity to cure its breach of implied warranties would be unnecessary and futile here because Defendants have known of and concealed the Defective Sunroofs and, on information and belief, have refused to repair or replace the Defective Sunroofs free of charge within a reasonable time.

396.    Defendants breached their express and implied warranties in violation of Cal. Civ. Code § 1791 *et seq*.

397.    As a direct and proximate result of Defendants' breach of their express and implied warranties, Plaintiffs Britt, Halem, and members of the Song-Beverly Sub-Class have suffered actual damages in an amount to be proven at trial.

398.    Plaintiffs Britt, Halem, and members of the Song-Beverly Sub-Class have been excused from performance of any warranty obligations as a result of Defendants' conduct described herein.

399.    Plaintiffs Britt, Halem, and members of the Song-Beverly Sub-Class seek actual damages, costs, attorneys' fees, and statutory damages as a result of Defendants' willful conduct alleged herein.  Plaintiffs Britt, Halem, and members of the Song-Beverly Sub-Class also seek reimbursement, replacement of the Defective Sunroofs, and/or revocation of the purchase or lease of the Class Vehicles, and all other relief available under Cal. Civ. Code § 1794.

400.    The applicable statute of limitations for the express and implied warranty claims have been tolled by the discovery rule and fraudulent concealment.

401.    The applicable statute of limitations for implied warranty claims has also been tolled by the terms of the express warranty.

**COUNT XVIII**
**FRAUD**
**(ON BEHALF OF THE GEORGIA SUB-CLASS)**

402.    Plaintiff Taylor incorporates and realleges each preceding paragraph as though fully set forth herein.

403.    Plaintiff Taylor brings this count on behalf of himself and the members of the Georgia Sub-Class.

404.    Defendants intentionally and knowingly falsely misrepresented, concealed, suppressed and/or omitted material facts including the standard, quality or grade of the Class Vehicles and the fact that the Defective Sunroofs installed in Class Vehicles are defective and prone to exploding or shattering, exposing drivers, occupants and members of the public to a safety risk.  Defendants intended that Plaintiff Taylor and members of the Georgia Sub-Class rely on Defendants' misrepresentations and omissions.   As a direct result of Defendants' fraudulent conduct, members of the Classes have suffered actual damages.

405.    Defendants owed a duty to disclose the Defective Sunroofs and their corresponding safety risk to Plaintiff Taylor and members of the Georgia Sub-Class because Defendant possessed superior and exclusive knowledge regarding the defect and the risk associated with the Defective Sunroofs.  Rather than disclose the defect, Defendants intentionally and knowingly falsely misrepresented, concealed, suppressed and/or omitted material facts including the standard, quality or grade of the Class Vehicles and the fact that the Defective Sunroofs installed in the Class Vehicles are defective and expose drivers and occupants to exploding or shattering Defective Sunroofs in order to sell additional Class Vehicles and avoid the cost of repair or replacement of the Defective Sunroofs.

406.    As a result of Defendants' failure to disclose to members of the Classes the material fact that the Defective Sunroofs installed in Class Vehicles are defective and prone to exploding or shattering, owners and lessees of Class Vehicles are required to spend hundreds or thousands of dollars to repair or replace the Defective Sunroofs and/or other vehicle parts damaged during the exploding or shattering of the Defective Sunroofs, or sell their vehicles at a substantial loss.  The fact that the Defective Sunroofs installed in the Class Vehicles are defective and prone to exploding or shattering is material because no reasonable consumer expects that he or she will have to spend hundreds or thousands of dollars for diagnosis, repair or replacement the Defective Sunroofs and because Plaintiff Taylor and members of the Georgia Sub-Class had a reasonable expectation that the Class Vehicles would not suffer from exploding or shattering Defective Sunroofs that would present a safety risk.

407.    The fact that the Defective Sunroofs installed in the Class Vehicles are defective and prone to exploding or shattering is also material because the sunroofs present a safety risk and place drivers and occupants at risk of serious injury or death.  When the Defective Sunroofs

explode or shatter, drivers and occupants may be sprayed with glass and injured.  Drivers and occupants of the Class Vehicles are also at risk for collisions caused by driver distraction as a result of an exploding or shattering Defective Sunroof, and the general public is also at risk for being involved in an accident with a Class Vehicle.

408.    Plaintiff Taylor and members of the Georgia Sub-Class would not have purchased the Class Vehicles but for Defendants' omissions and concealment of material facts regarding the nature and quality of the Class Vehicles and existence of the defect in the Defective Sunroofs, would have paid less for the Class Vehicles, or would have had the Defective Sunroofs replaced during the applicable warranty periods.

409.    Defendants knew their false misrepresentation, concealment and suppression of material facts was false and misleading and knew the effect of concealing those material facts. Defendants knew their concealment and suppression of the defect in the Defective Sunroofs would sell more Class Vehicles and would discourage Plaintiff Taylor and members of the Georgia Sub-Class from seeking replacement or repair of the Defective Sunroofs within the warranty periods.  Further, Defendants intended to induce Plaintiff Taylor and members of the Georgia Sub-Class into purchasing or leasing the Class Vehicles and discourage them from seeking replacement or repair of the Defective Sunroofs within the warranty periods, thereby unlawfully transferring the cost of repair or replacement from Defendants to Plaintiff Taylor and members of the Georgia Sub-Class, in order to decrease costs and increase profits.

410.    In connection with the purchase or lease of each of the Class Vehicles, Defendants provided warranty coverage for the Class Vehicles under one or more manufacturer's warranties.  For example, Defendants currently provide a New Vehicle Limited Warranty which includes coverage for defects in materials or workmanship to the first retail purchaser and each

subsequent purchaser for 4 years or 50,000 miles, whichever occurs first.  Under the warranties provided to Plaintiff Taylor and members of the Georgia Sub-Class, Defendants promised to repair or replace covered defective parts arising out of defects in materials and/or workmanship, including the Defective Sunroofs, at no cost to owners and lessees of the Class Vehicles.

411.    Although Defendants informed Plaintiff Taylor and members of the Georgia Sub-Class that they would stand behind the quality and reliability of the Class Vehicles and repair or remedy any issues that arose during the warranty periods, Defendants knew (at the time of sale or lease and thereafter) that the Class Vehicles contained a defect in the Defective Sunroofs, concealed the defect, and never intended to repair or replace the Defective Sunroofs during the warranty periods.  To date, Defendants have not provided Plaintiff Taylor and members of the Georgia Sub-Class with a repair or remedy for the Defective Sunroofs, and have not offered to replace the Defective Sunroofs in Class Vehicles.

412.    Defendants acted with malice, oppression and fraud.

413.    Plaintiff Taylor and members of the Georgia Sub-Class reasonably relied upon Defendants' knowing, affirmative and active false representations, concealment and omissions. As a direct and proximate result of Defendants' false representations, omissions and active concealment of material facts regarding the defect in the Defective Sunroofs, Plaintiff Taylor and members of the Georgia Sub-Class have suffered actual damages in an amount to be determined at trial.

**COUNT XIX**
**BREACH OF EXPRESS WARRANTY**
**GA. CODE ANN. §§ 11-2-313, 11-2A-103, AND 11-2A-210**
**(ON BEHALF OF THE GEORGIA SUB-CLASS)**

414.    Plaintiff Taylor incorporates and realleges each preceding paragraph as though fully set forth herein.

415.    Plaintiff Taylor brings this count on behalf of himself and the members of the Georgia Sub-Class.

416.    Defendants marketed the Class Vehicles as safe, built to last, and reliable vehicles. Such representations formed the basis of the bargain in Plaintiff Taylor's and the Georgia Sub-Class's decisions to purchase or lease the Class Vehicles.

417.    Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Ga. Code Ann. §§ 11-2-104(1) and 11-2A-103(3), and "sellers" of motor vehicles under § 11-2-103(1)(d).

418.    With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Ga. Code Ann. § 11-2A-103(1)(p).

419.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Ga. Code Ann. §§ 11-2-105(1) and 11-2A-103(1)(h).

420.    In connection with the purchase or lease of each of the Class Vehicles, Defendants provide warranty coverage for the Class Vehicles under one or more manufacturer's warranties.  For illustrative purposes, Defendants currently provide a New Vehicle Limited Warranty which includes coverage for defects in materials or workmanship to the first retail purchaser and each subsequent purchaser for 4 years or 50,000 miles, whichever occurs first. Under warranties provided to members of the Classes, Defendants promised to repair or replace covered defective parts arising out of defects in materials and/or workmanship, including the Defective Sunroofs, at no cost to owners and lessees of the Class Vehicles.  However, on information and belief, Defendants have concealed the defect in the Defective Sunroofs by, *inter alia*, blaming the damage on rocks or other foreign matter, and refusing to provide warranty coverage.

421.    Defendants' warranties formed a basis of the bargain that was reached when Plaintiff Taylor and members of the Georgia Sub-Class purchased or leased their Class Vehicles.

422.    The defect in the Defective Sunroofs existed in the Class Vehicles at the time of sale or lease and within the warranty periods but Plaintiff Taylor and members of the Georgia Sub-Class had no knowledge of the existence of the defect, which was known and concealed by Defendants.  Despite the applicable warranties, Defendants failed to inform Plaintiff Taylor and members of the Georgia Sub-Class that the Class Vehicles contained the defect in the Defective Sunroofs during the warranty periods in order to wrongfully transfer the costs of repair or replacement of the Defective Sunroofs to Plaintiff Taylor and members of the Georgia Sub-Class.

423.    Because of the defect in the Defective Sunroofs, Class Vehicles are not safe and reliable and owners and lessees of these vehicles have lost confidence in the ability of Class Vehicles to perform the function of safe reliable transportation.

424.    Plaintiff Taylor and members of the Georgia Sub-Class could not have reasonably discovered the defect in the Defective Sunroofs prior to the Defective Sunroofs exploding or shattering.

425.    Defendants breached the express warranty promising to repair and correct a manufacturing defect or defects in materials or workmanship of any parts they supplied.

426.    On information and belief, Defendants have not repaired or replaced the Defective Sunroofs free of charge for Plaintiff Taylor and members of the Georgia Sub-Class despite the defect in the Defective Sunroofs in the Class Vehicles at the time of sale or lease, or within the applicable warranty periods.

427.    Defendants further breached their express warranties by selling Class Vehicles that were defective with respect to materials, workmanship, and manufacture when Defendants knew the Defective Sunroofs were defective and had an associated safety risk.

428.    Class Vehicles were not of merchantable quality and were unfit for the ordinary purposes for which passenger vehicles are used because of materials, workmanship, and manufacture defects which cause exploding or shattering Defective Sunroofs which do not perform as warranted.

429.    Defendants were provided notice of the defect in the Defective Sunroofs by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA, and through their own testing.  Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here because Defendants have known of and concealed the Defective Sunroofs and, on information and belief, have refused to repair or replace the Defective Sunroofs for Class members free of charge within or outside of the warranty periods despite the defect's existence at the time of sale or lease of the Class Vehicles, and within the applicable warranty periods.

430.    Defendants was further provided notice of its breach of express warranties by Plaintiff he when he presented his Class Vehicle for repair at Athens BMW of Athens, Georgia on August 24, 2019.  Upon information and belief, Athens BMW is an authorized dealer of Defendants and their duly authorized agent to perform warranty repairs.  Upon diagnosing the shattered sunroof in his Class Vehicle, Athens BMW quoted Plaintiff Taylor $1,300 to replace the sunroof instead of submitting this as a warranty repair to Defendants.  Plaintiff Taylor also provided notice to Defendants by letter dated September 13, 2019.  Despite these notices,

Defendants did not cure its breach of written warranties and failed to provide a suitable repair or replacement of the Defective Sunroof free of charge within a reasonable time.

431.    Any attempt by Defendants to disclaim or limit recovery to the terms of the express warranties is unconscionable and unenforceable here.    Specifically, Defendants' warranty limitation is unenforceable because they knowingly sold or leased a defective product without informing consumers about the defect.    The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiff Taylor and members of the Georgia Sub-Class. Among other things, Plaintiff Taylor and members of the Georgia Sub-Class did not determine these time limitations, the terms of which unreasonably favored Defendants.    A gross disparity in bargaining power existed between Defendants and members of the Classes, and Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the Defective Sunroofs are prone to exploding or shattering.

432.    Further, the limited warranty promising to repair and/or correct a manufacturing defect fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff Taylor and members of the Georgia Sub-Class whole because, on information and belief, Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

433.    Defendants knew that the Class Vehicles were inherently defective and did not conform to their warranties and Plaintiff Taylor and members of the Georgia Sub-Class were induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

434.    Plaintiff Taylor and members of the Georgia Sub-Class have been excused from performance of any warranty obligations as a result of Defendants' conduct described herein.

435.    As a direct and proximate result of Defendants' breach of express warranties, Plaintiff Taylor and members of the Georgia Sub-Class have been damaged in an amount to be determined at trial.

436.    Finally, because of Defendants' breach of express warranty as set forth herein, Plaintiff Taylor and members of the Georgia Sub-Class assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to Plaintiff Taylor and members of the Georgia Sub-Class of the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

**COUNT XX**
**BREACH OF IMPLIED WARRANTY**
**GA. CODE ANN. §§ 11-2A-103, 11-2A-212, 11-2-314, AND 11-2-315**
**(ON BEHALF OF THE GEORGIA SUB-CLASS)**

437.    Plaintiff Taylor incorporates and realleges each preceding paragraph as though fully set forth herein.

438.    Plaintiff Taylor brings this count on behalf of himself and on behalf of the Georgia Sub-Class.

439.    Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Ga. Code Ann. §§ 11-2-104(1) and 11-2A-103(3), and "sellers" of motor vehicles under § 11-2-103(1)(d).

440.    With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Ga. Code Ann. § 11-2A-103(1)(p).

441.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Ga. Code Ann. §§ 11-2-105(1) and 11-2A-103(1)(h).

442.    A warranty the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to Ga. Code Ann. §§ 11-2-314 and 11-2A-212.

443.    Plaintiff Taylor and members of the Georgia Sub-Class purchased or leased the Class Vehicles from Defendants by and through Defendants' authorized agents for retail sales, or were otherwise expected to be the eventual purchasers of the Class Vehicles when bought from a third party.  At all relevant times, Defendants were the manufacturers, distributors, warrantors, and/or sellers of Class Vehicles.  Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased.

444.    The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose of providing safe and reliable transportation.  The Class Vehicles contain an inherent defect in the Defective Sunroofs (at the time of sale or lease and thereafter) and present an undisclosed safety risk to drivers and occupants.  Thus, Defendants breached their implied warranty of merchantability.

445.    Defendants cannot disclaim their implied warranties as they knowingly sold or leased a defective product.

446.    Defendants were provided notice of the defect in the Defective Sunroofs by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA, and through their own testing. Affording Defendants a reasonable opportunity to cure their breach of implied warranties would be unnecessary and futile here because Defendants have known of and concealed the defect in the Defective Sunroofs and, on information and belief, have refused to repair or replace the Defective Sunroofs free of charge within or outside

of the warranty periods despite the defect's existence at the time of sale or lease of the Class Vehicles.

447.    Defendants were further provided notice of its breach of implied warranties by Plaintiff Taylor he when he presented his Class Vehicle for repair at Athens BMW of Athens, Georgia on August 24, 2019.  Upon information and belief, Athens BMW is an authorized dealer of Defendants and their duly authorized agent to perform warranty repairs.  Upon diagnosing the shattered sunroof in his Class Vehicle, Athens BMW quoted Plaintiff Taylor $1,300 to replace the sunroof instead of submitting this as a warranty repair to Defendants.  Plaintiff Taylor also provided notice to Defendants by letter dated September 13, 2019.  Despite these notices, Defendants did not cure their breach of implied warranties and failed to provide a suitable repair or replacement of the Defective Sunroof free of charge within a reasonable time.

448.    As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiff Taylor and members of the Georgia Sub-Class have been damaged in an amount to be proven at trial.

449.    Any attempt by Defendants to disclaim or limit the implied warranty of merchantability vis-à-vis consumers is unconscionable and unenforceable here.  Specifically, Defendants' warranty limitation is unenforceable because they knowingly sold or leased a defective product without informing consumers about the defect. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and members of the Classes.  Among other things, Plaintiff Taylor and members of the Georgia Sub-Class did not determine these time limitations, the terms of which unreasonably favored Defendants.  A gross disparity in bargaining power existed between Defendants and members of the Classes, and Defendants knew or should have known that the Class Vehicles were defective

at the time of sale or lease and that the Defective Sunroofs were defective and posed a safety risk during the applicable warranty periods.

450.    Further, as manufacturers of consumer goods, Defendants are precluded from excluding or modifying an implied warranty of merchantability or limiting consumer remedies for breach of this warranty.

451.    Plaintiff Taylor and members of the Georgia Sub-Class have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Defendants' conduct described herein.

452.    The Class Vehicles are not safe and reliable and owners and lessees of these vehicles have lost confidence in the ability of Class Vehicles to perform the function of safe reliable transportation without the likelihood of unanticipated sudden exploding or shattering of the Defective Sunroofs.  Defendants are estopped by their conduct, as alleged herein, from disclaiming any and all implied warranties with respect to the Defective Sunroofs in Class Vehicles.

453.    The applicable statute of limitations for the implied warranty claim has been tolled by the discovery rule, fraudulent concealment and the terms of the express warranty.

**COUNT XXI**
**VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT ("MMWA"),**
**15 U.S.C. § 2301 *et seq.***
**(ON BEHALF OF THE NATIONWIDE CLASS OR, ALTERNATIVELY, ON BEHALF**
**OF THE GEORGIA SUB-CLASS)**

454.    Plaintiff Taylor incorporates and realleges each preceding paragraph as though fully set forth herein.

455.    Plaintiff Taylor brings this count on behalf of himself and the Nationwide Class or, alternatively, on behalf of the Georgia Sub-Class.

456.    Plaintiff Taylor satisfies the MMWA jurisdictional requirement because he alleges diversity jurisdiction under CAFA, 28 U.S.C. § 1332(d)(2).

457.    Plaintiff Taylor and members of the Classes are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

458.    Defendants are "supplier[s]" and "warrantor[s]" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

459.    The Class Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

460.    The MMWA provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty. *See* 15 U.S.C. § 2310(d)(1).

461.    Defendants provided Plaintiff Taylor and members of the Classes with one or more express warranties, which are covered under 15 U.S.C. § 2301(6).  In connection with the purchase or lease of each of the Class Vehicles, Defendants provide warranty coverage for the Class Vehicles under one or more manufacturer's warranties.  For illustrative purposes, Defendants currently provide a New Vehicle Limited Warranty which includes coverage for defects in materials or workmanship to the first retail purchaser and each subsequent purchaser for 4 years or 50,000 miles, whichever occurs first.  Under warranties provided to members of the Classes, Defendants promised to repair or replace covered defective parts arising out of defects in materials and/or workmanship, including the Defective Sunroofs, at no cost to owners and lessees of the Class Vehicles.  However, on information and belief, Defendants have concealed the defect in the Defective Sunroofs by, *inter alia*, blaming the damage on rocks or other foreign matter, and refusing to provide warranty coverage within or outside of the applicable warranty periods.

462.    Plaintiff Taylor and members of the Classes experienced the defect in the Defective Sunroofs within the warranty periods but Defendants failed to inform Plaintiffs and members of the Classes of the existence of the Defective Sunroofs and associated safety risk, and failed to provide a suitable repair or replacement of the Defective Sunroofs free of charge within a reasonable time.

463.    Defendant BMW NA was provided notice by letter dated March 28, 2019 that Plaintiffs would pursue a claim under the MMWA on behalf of a class.

464.    Any attempt by Defendants to disclaim or limit their express or implied warranties is unconscionable and unenforceable here.    Specifically, Defendants' warranty limitations are unenforceable because they knowingly sold or leased a defective product without informing consumers about the defect.    The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiff Taylor and members of the Classes.    Among other things, Plaintiff Taylor and members of the Classes did not determine these time limitations, the terms of which unreasonably favored Defendants.    A gross disparity in bargaining power existed between Defendants and members of the Classes, and Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease.

465.    The Class Vehicles' implied warranties are covered under 15 U.S.C. § 2301(7).

466.    Defendants breached these warranties by misrepresenting the standard, quality or grade of the Class Vehicles and failing to disclose and fraudulently concealing the existence of the defect in the Defective Sunroofs.    Without limitation, the Class Vehicles share a common defect in design, material, manufacturing and/or workmanship that is prone to exploding or shattering and fails to operate as represented by Defendants.

467.    Affording Defendants a reasonable opportunity to cure their breach of warranties would be unnecessary and futile.  At the time of sale or lease of each Class Vehicle and all relevant times thereafter, Defendants knew of the material misrepresentations and omissions concerning the standard, quality or grade of the Class Vehicles and the existence of the defect in the Defective Sunroofs, but failed to repair or replace the Defective Sunroofs and/or disclose the defect in the Defective Sunroofs.  Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiff resort to an informal dispute resolution procedure and/or afford Defendants a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied.

468.    Plaintiff Taylor and members of the Classes would suffer economic hardship if they returned their Class Vehicles, but did not receive the return of all payments made by them to Defendants.  Thus, Plaintiff Taylor and members of the Classes have not re-accepted their Class Vehicles by retaining them.

469.    The amount in controversy of Plaintiff Taylor's individual claims meets or exceeds the sum of $25.  The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

470.    Plaintiff Taylor, individually and on behalf of the Classes, seek all damages permitted by law, including diminution in the value of the Class Vehicles, in an amount to be proven at trial.

**COUNT XXII**
**VIOLATION OF GEORGIA'S UNIFORM DECEPTIVE TRADE PRACTICES ACT,**
**GA. CODE ANN. § 10-1-370 *et seq.***
**(ON BEHALF OF THE GEORGIA SUB-CLASS)**

471.    Plaintiff Taylor incorporates and realleges each preceding paragraph as though fully set forth herein.

472.    Plaintiff Taylor brings this count on behalf of himself and the members of the Georgia Sub-Class.

473.    Plaintiff Taylor, the members of the Georgia Sub-Class, and Defendants are "persons" within the meaning of the Georgia Uniform Deceptive Trade Practices Act ("Georgia UDTPA"), Ga. Code. Ann. § 10-1-371(5).

474.    The Georgia UDTPA prohibits any "deceptive trade practices," which include misrepresenting the "standard, quality, or grade" of goods or services, and engaging "in any other conduct which similarly creates a likelihood of confusion or of misunderstanding." Ga. Code Ann. § 10-1-372(a).

475.    In the course of Defendants' business, Defendants violated the Georgia UDTPA by failing to disclose and actively concealing the safety risks posed by the Class Vehicles and/or the Defective Sunroofs installed in them, as described above.  Specifically, in marketing, offering for sale, and selling the defective Class Vehicles, Defendants engaged in one or more of the following deceptive trade practices, including representing that the Class Vehicles have characteristics or benefits that they do not have; representing that they are of a particular standard and quality when they are not; advertising them with the intent not to sell them as advertised; and/or engaging in other conduct which created a likelihood of confusion or of misunderstanding.

476.    Defendants have known of the Defective Sunroofs in the Class Vehicles and failed to disclose and actively concealed the dangers and risk posed by the Class Vehicles.

477. By failing to disclose and by actively concealing the Defective Sunroofs in the Class Vehicles, by marking the Class Vehicles as safe, reliable, and of high quality, and by presenting themselves as reputable manufacturers that value safety, Defendants engaged in unfair and deceptive business practices in violation of the Georgia UDTPA. Defendants deliberately withheld the information about the propensity of the Defective Sunroofs to explode and shatter, in order to ensure that consumers would purchase the Class Vehicles.

478. In the course of Defendants' business, they willfully failed to disclose and actively concealed the safety risk posed by the Defective Sunroofs. Defendants compounded the deception by repeatedly asserting that the Class Vehicles were safe, reliable, and of high quality, and by claiming to be reputable manufacturers that value safety.

479. Defendants' unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead, tended to create a false impression in consumers, were likely to and did in fact deceive reasonable consumers, including Plaintiff Taylor and the members of the Georgia Sub-Class, about the true safety and reliability of Class Vehicles, the quality of Defendants' brands, and the true value of the Class Vehicles.

480. Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with an intent to mislead Plaintiff Taylor and the members of the Georgia Sub-Class.

481. Defendants knew or should have known that their conduct violated the Georgia UDTPA.

482.   As alleged above, Defendants made material statements about the safety and reliability of the Class Vehicles and their willingness to honor their express warranties that were either false or misleading.

483.   To protect their profits and to avoid remediation costs and reputational damage to their brand, Defendants concealed safety risk posed by the Class Vehicles and/or the Defective Sunroofs, and allowed unsuspecting new and used car purchasers to continue to buy/lease the Class Vehicles, and allowed them to continue driving the vehicles without knowledge of the safety risk posed by the Defective Sunroofs.

484.   Defendants owed Plaintiff Taylor and the members of the Georgia Sub-Class a duty to disclose the true safety and reliability of the Class Vehicles because Defendants:

(a)   Possessed exclusive and superior knowledge of the dangers and risks posed by the foregoing;

(b)   Intentionally concealed the foregoing from Plaintiff Taylor and the members of the Georgia Sub-Class; and/or

(c)   Made incomplete representations about the safety and reliability of the Class Vehicles, while purpose withholding material facts from Plaintiff Taylor and the members of the Georgia Sub-Class that contradicted these representations.

485.   Because Defendants fraudulently concealed the Defective Sunroofs in the Class Vehicles, and disclosure of the Defective Sunroofs would cause a reasonable consumer to be deterred from purchasing the Class Vehicles, the value of the Class Vehicles has been diminished and they are now with significantly less they otherwise would be.

486.    Defendants' failure to disclose and active concealment of the dangers and risks posed by the Defective Sunroofs in Class Vehicles were material to Plaintiff Taylor and the members of the Georgia Sub-Class.  A vehicle made by a reputable manufacturer of safe vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedies them.

487.    Plaintiff Taylor and the members of the Georgia Sub-Class suffered ascertainable loss caused by Defendants' misrepresentations and their failure to disclose material information. Had they been aware of Defective Sunroofs that existed in the Class Vehicles and Defendants' disregard for safety, Plaintiff Taylor and the members of the Georgia Sub-Class either would have paid less for their vehicles or would not have purchased or leased them at all.  Plaintiff Taylor and the members of the Georgia Sub-Class had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose.

488.    Plaintiff Taylor and the members of the Georgia Sub-Class did not receive the benefit of their bargain as a result of Defendants' misconduct.

489.    As a direct and proximate result of Defendants' violations of the Georgia UDTPA, Plaintiff Taylor and the members of the Georgia Sub-Class have suffered injury-in-fact and/or actual damage.

490.    Pursuant to Ga. Code Ann. §10-1-373, Plaintiff Taylor and the members of the Georgia Sub-Class seek any such orders or judgments as may be necessary to restore to Plaintiff Taylor and the members of the Georgia Sub-Class any money acquired by deceptive trade practices, including restitution and/or restitutionary disgorgement, and any other just and proper relief available under the Georgia UDTPA.

**COUNT XXIII**
**VIOLATION OF GEORGIA'S FAIR BUSINESS PRACTICES ACT,**
**GA. CODE ANN. § 10-1-390 *et seq.***
**(ON BEHALF OF THE GEORGIA SUB-CLASS)**

491.    Plaintiff Taylor incorporates and realleges each preceding paragraph as though fully set forth herein.

492.    Plaintiff Taylor brings this count on behalf of himself and the members of the Georgia Sub-Class.

493.    The Georgia Fair Business Practices Act ("Georgia FBPA") declares "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce" to be unlawful.  Ga. Code Ann. §10-1-393(a).

494.    In the course of Defendants' business, Defendants violated the Georgia FBPA by failing to disclose and actively concealing safety risks posed by the Class Vehicles, as described above.  Specifically, in marketing, offering for sale, and selling the Class Vehicles with the Defective Sunroofs installed in them, Defendants engaged in one or more of the following unfair or deceptive acts or practices as defined in Ga. Code Ann. §10-1-393(b), including representing that the Class Vehicles have characteristics or benefits that they do not have; representing that they are of a particular standard and quality when they are not; and/or advertising them with the intent not to sell them as advertised.

495.    Defendants have known of the Defective Sunroofs in their Class Vehicles and failed to disclose and actively concealed the associated safety risk.

496.    By failing to disclose and by actively concealing the existence of the Defective Sunroofs in the Class Vehicles, by marketing them as safe, reliable, and of high quality, and by presenting themselves as reputable manufacturers that value safety, Defendants engaged in unfair or deceptive business practices in violation of the Georgia FBPA.  Defendants deliberately

withheld the information about the propensity of Defective Sunroofs to explode and shatter, in order to ensure that consumers would purchase the Class Vehicles.

497.    In the course of Defendants' business, they willfully failed to disclose and actively concealed the safety risk posed by the serious defect discussed above.  Defendants compounded the deception by repeatedly asserting that the Class Vehicles were safe, reliable, and of high quality, and by claiming to be reputable manufacturers that value safety.

498.    Defendants' unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead, tended to create a false impression in consumers, were likely to and did in fact deceive reasonable consumers, including Plaintiff Taylor and the members of the Georgia Sub-Class, about the true safety and reliability of Class Vehicles, the quality of Defendants' brands, and the true value of the Class Vehicles.

499.    Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with an intent to mislead Plaintiff Taylor and the members of the Georgia Sub-Class.

500.    Defendants knew or should have known that their conduct violated the Georgia FBPA.

501.    As alleged above, Defendants made material statements about the safety and reliability of the Class Vehicles that were either false or misleading.

502.    To protect their profits and to avoid remediation costs and damage to their reputations, Defendants concealed the dangers and risks posed by the Class Vehicles, and allowed unsuspecting new and used car purchasers to continue to buy/lease the Class Vehicles, and allowed them to continue driving vehicles without knowing of the safety risk.

503.     Defendants owed Plaintiff Taylor and the members of the Georgia Sub-Class a duty to disclose the true safety and reliability of the Class Vehicles because Defendants:

(a)     Possessed exclusive and superior knowledge of the dangers and risk posed by the foregoing;

(b)     Intentionally concealed the foregoing from Plaintiff Taylor and the members of the Georgia Sub-Class; and/or

(c)     Made incomplete representations about the safety and reliability of the Class Vehicles, while purposefully withholding material facts from Plaintiff Taylor and the Georgia Sub-Class that contradicted these representations.

504.     Because Defendants fraudulently concealed the existence of the Defective Sunroofs in the Class Vehicles, and disclosure of their existence would cause a reasonable consumer to be deterred from purchasing the Class Vehicles, the value of the Class Vehicles has been diminished and they are now worth significantly less than they otherwise would be.

505.     Defendants' failure to disclose and active concealment of the associated safety risk of the Defective Sunroofs in Class Vehicles were material to Plaintiff Taylor and the members of the Georgia Sub-Class.  A vehicle made by a reputable manufacturer of safe vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedies them.

506.     Plaintiff Taylor and the members of the Georgia Sub-Class suffered ascertainable loss caused by Defendants' misrepresentations and their failure to disclose material information. Had they been aware of the Defective Sunroofs that existed in the Class Vehicles, and Defendants' disregard for safety, Plaintiff Taylor and the members of the Georgia Sub-Class

either would have paid less for their vehicles or would not have purchased or leased them at all. Plaintiff Taylor and the members of the Georgia Sub-Class had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose.

507.    Plaintiff Taylor and the members of the Georgia Sub-Class did not receive the benefit of their bargain as a result of Defendants' misconduct.

508.    As a direct and proximate result of Defendants' violations of the Georgia FBPA, Plaintiff Taylor and the members of the Georgia Sub-Class have suffered injury-in-fact and/or actual damage.

509.    Pursuant to Ga. Code Ann. §10-1-399, Plaintiff Taylor and the members of the Georgia Sub-Class seek an order awarding damages, treble damages, and any other just and proper relief available under the Georgia FBPA.

510.    Defendants were provided notice of the issues by letter dated September 13, 2019, sent on behalf of Plaintiff Taylor to Defendants pursuant to Ga. Code Ann. §10-1-399(b). Because Defendants failed to remedy their unlawful conduct within the requisite time period, Plaintiff Taylor and the members of the Class seek all damages and relief to which they are entitled.

## IX.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, respectfully request that this Court enter judgment against Defendants and in favor of Plaintiffs and the Class and Sub-Classes, and award the following relief:

A.    An order certifying this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, declaring Plaintiffs as the representatives of the Class and Sub-Classes, and Plaintiffs' counsel as counsel for the Class and Sub-Classes;

B.       An order awarding declaratory relief and enjoining Defendants from continuing the unlawful, deceptive, fraudulent, harmful, and unfair business conduct and practices alleged herein;

C.       Injunctive and equitable relief in the form of a comprehensive program to repair or replace the Defective Sunroofs in all Class Vehicles, and/or buyback all Class Vehicles, and to fully reimburse and make whole all members of the Classes for all costs and economic losses;

D.       A declaration that Defendants are financially responsible for all Class notice and the administration of Class relief;

E.       An order awarding costs, restitution, disgorgement, punitive damages, treble damages and exemplary damages under applicable law, and compensatory damages for economic loss and out-of-pocket costs in an amount to be determined at trial;

F.       An order awarding any applicable statutory and civil penalties;

G.       A declaration that Defendants are required to engage in corrective advertising;

H.       An order requiring Defendants to pay both pre- and post-judgment interest on any amounts awarded;

I.       An award of costs, expenses and attorneys' fees as permitted by law; and

J.       Such other or further relief as the Court may deem appropriate, just, and equitable.

## X.    DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any and all issues in this action so triable of right.

DATED: December 4, 2019                     Respectfully submitted,

                                            */s/ Joseph H. Meltzer*
                                            Joseph H. Meltzer
                                            Melissa L. Troutner (*Pro Hac Vice* to be filed)
                                            Donna Siegel Moffa
                                            Tyler S. Graden
                                            KESSLER TOPAZ
                                              MELTZER & CHECK, LLP
                                            280 King of Prussia Road
                                            Radnor, PA 19087
                                            Telephone: (610) 667-7706

                                            James E. Cecchi
                                            Lindsey H. Taylor
                                            CARELLA, BYRNE, CECCHI,
                                            OLSTEIN, BRODY & AGNELLO, P.C.
                                            5 Becker Farm Road
                                            Roseland, New Jersey 07068
                                            Telephone: (973) 994-1700

                                            Jason H. Alperstein
                                            Mark J. Dearman
                                            ROBBINS GELLER
                                            RUDMAN & DOWD LLP
                                            120 East Palmetto Park Road
                                            Suite 500
                                            Boca Raton, Florida 33432
                                            Telephone: (561)750-3000

                                            *Attorneys for Plaintiffs and the proposed
                                            Classes*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 4th day of December, 2019, a true and correct copy of the foregoing document was electronically filed with the Clerk of the Court, is available for viewing and downloading from the ECF system, and will be served by operation of the Court's electronic filing system (CM/ECF) upon all counsel of record.

*/s/ Joseph H. Meltzer*